The CITY OF ARVADA, a municipal corporation; All Water Users in the Arvada Service Area, Class I; and All Persons who claim an interest in the escrowed System Development Charges, Class II, Plaintiffs-Appellees,

v.

The CITY AND COUNTY OF DENVER, acting By and Through its BOARD OF WATER COMMISSIONERS, Defendant-Appellant.

The CITY OF ARVADA, a municipal corporation, Plaintiff-Appellee,

and

All Persons Who Claim an Interest in the Escrowed System Development Charges, Class II, Plaintiffs-Appellants,

and

All Water Users in the Arvada Service Area, Class I, Plaintiff,

v.

The CITY AND COUNTY OF DENVER, acting By and Through its BOARD OF WATER COMMISSIONERS, Defendant-Appellant.

CITY OF ARVADA, a municipal corporation, Plaintiff,

and

All Water Users in the Arvada Service Area, Class I, Plaintiff,

and

All Persons Who Claim an Interest in the Escrowed System Development Charges (Except those Persons designated as Class II-A), Class II, Plaintiff-Appellee,

and

Wood Brothers Homes, Inc., Intervenor-Appellee,

and

Class II-A, Plaintiff-Appellant,

v.

The CITY AND COUNTY OF DENVER, Defendant-Appellant.

No. 80SA538.

Supreme Court of Colorado, En Banc.

April 4, 1983.

As Modified on Denial of Rehearing June 6, 1983.

Benjamin P. King, Arvada City Atty., Roger W. Noonan, Arvada, Moses, Wittemyer, Harrison & Woodruff, P.C., Raphael J. Moses, Robert E.L. Beebe, James R. Montgomery, Boulder, for plaintiff-appellee The City of Arvada.

Wayne D. Williams, Henry V.S. Hall, Denver, for defendant-appellant City and County of Denver Acting By and Through its Bd. of Water Com'rs.

Sweeney & Ross, P.C., David C. Deuben, Lakewood, for plaintiff-appellant Class II.

George Alan Holley & Associates, Charles E. Stuart, Daniel S.M. Smith, Golden, for intervenor-appellee Wood Brothers Homes, Inc.

Goldstein & Armour, P.C., James H. Downey, Denver, for plaintiff-appellant Class II–A.

HODGES, Chief Justice.

This is an appeal from three trial court rulings granting summary judgments. We affirm. Because the procedural and factual background of the case is lengthy and complex, it is discussed in three phases to correspond with each of the trial court's rulings.

## PHASE I

In 1965 the Denver Water Board (the Board) contracted to sell Arvada up to

19,000 acre feet of water per year. Arvada agreed to pay for this water at the rates set forth in a schedule attached to the contract. Because the contract was of an indefinite duration, the parties agreed that the Board would have the right to periodically revise the schedule.[1]

In 1972 the Board adopted Operating Rule 2.101 which assessed a "system development charge" (SDC) against all persons and entities coming into the system after January 1, 1973. Before the Rule went into effect, Arvada filed a complaint for a declaratory judgment exempting it from the provisions of the new rule. Pending resolution of this suit, the parties agreed that Arvada would collect the SDC and place the funds in an escrow account.

On February 20, 1974, judgment was entered awarding the escrowed funds to the Board, the trial court having concluded that while the SDC could not be assessed against Arvada, it could be assessed against each individual resident. Arvada appealed this judgment on behalf of its individual users. In *City of Arvada v. City and County of Denver,* 36 Colo.App. 146, 539 P.2d 1294 (1975), the court of appeals held that these parties should have been joined before judgment was entered against them. It therefore vacated the judgment and ordered Arvada to refund the escrowed SDC charges to the users who paid them. On appeal we affirmed, *City and County of Denver v. City of Arvada,* 192 Colo. 88, 556 P.2d 76 (1976), except for that section of the court of appeals' decision ordering a refund of the escrowed SDC funds. We remanded the case for a trial on this issue with the users joined as parties in interest.

On remand the trial court established the following classes pursuant to C.R.C.P. 23:

Class I—all water users in the Arvada service area.

Class II—all persons who originally paid an SDC but later transferred their property.

Class II–A, Intervenors—all persons who currently own property upon which an SDC was assessed, whether or not they originally paid the charge.

On Motions for Summary Judgment the trial court ruled that the Board could *not* assess an SDC against Arvada's individual users. The Board's objection to this ruling constitutes the subject matter of the present appeal. Before addressing this particular issue, however, we note that the Board never appealed the trial court's 1974 ruling that the SDC could not be assessed against the City of Arvada. Consequently, that ruling is *res judicata* and we only address the applicability of the SDC against individual users within the City of Arvada. We hold that the trial court correctly concluded that the fee may not be assessed against these individuals.

By the terms of Rule 2.101, the SDC is to be assessed only against users who come into the system after January 1, 1973. Since Arvada's service contract was entered into in 1965, it clearly cannot be assessed a development fee, and since the rights of individual residents to the use of water are derived through and are the same as Arvada's, those individuals are also exempt from payment of the fee. As stated earlier, the 1965 contract gave Arvada the right to receive a maximum of 19,000 acre feet per year. With respect to that amount, Arvada is an "old" connector and as long as its residents use no more than this amount, they too are old connectors.

It should also be noted that under the 1965 contract, Arvada receives its water at a single, metered delivery point. Denver has no further responsibilities and performs no additional services once the water is delivered to that point. Arvada provides

---

1. This arrangement was set forth in paragraphs 65 and 66 of the parties' contract:

"65. Arvada agrees to pay for all water delivered hereunder at the rates set forth in the schedule of charges attached to and made a part of this contract and denominated Exhibit C. . . .

66. It is mutually agreed that the duration of this contract is such that the passage of time will require changes in the charges for the use of water hereunder; . . . Therefore, Arvada agrees that the Board may modify the schedule of charges from time to time in its discretion. . . ."

the remaining treatment, storage and transmission facilities necessary to deliver potable water to its residents. These facts further support our conclusion that the 1965 contract never contemplated that Arvada's individual users could be charged a development fee directed against new connectors to the Denver water system.

### PHASE II

The facts relevant to Phase II of this appeal are as follows: In 1975, two years after the Board first imposed its SDC, Arvada's City Council passed an ordinance imposing a one-time development fee on all persons connecting into the Arvada water system after April 1, 1975. The fee had two parts: a flat fee of $550 per residential unit and a sliding scale fee dependent upon the size of the meter being installed. The schedule setting forth the latter graduated fee was identical to the schedule used by the Denver Water Board in computing its SDC. Arvada has been depositing the graduated development fee into the escrow account mentioned earlier. Therefore, if the Board's appeal is unsuccessful, those development fees collected since 1975 will belong to the City of Arvada and not the individuals who originally paid them. These individuals have therefore challenged the validity of that portion of Arvada's development fee which corresponds to the Denver SDC. These Appellants allege that the fee is unconstitutional, unauthorized and so excessive, arbitrary and unreasonable as to be invalid.

With respect to Arvada's authority to impose a development fee, we affirm the trial court's ruling that Arvada was properly authorized to enact the fee ordinance. Subsection 31–35–402(1)(f), C.R.S.1973 (1977 Repl.Vol. 12), gives municipalities the power

"[t]o prescribe, revise, and collect in advance or otherwise, from any consumer or any owner or occupant of any real property connected therewith or receiving service therefrom, *rates, fees, tolls, and charges or any combination thereof* for the services furnished by, or *the direct or indirect connection with, or the use of,* or

any commodity from such *water facilities or* sewerage facilities or both, *including, without limiting the generality of the foregoing,* minimum charges, *charges for the availability of service, tap fees,* disconnection fees, reconnection fees, and reasonable penalties for any delinquencies...; and in anticipation of the collection of the revenues of such water facilities or sewerage facilities, or joint system, to issue revenue bonds to finance in whole or in part the cost of acquisition, construction, reconstruction, improvement, betterment, or extension of the water facilities or sewerage facilities, or both; and to issue temporary bonds until permanent bonds and any coupons appertaining thereto have been printed and exchanged for the temporary bonds; ..."

(Emphasis added).

While the imposition of a development fee as such is not authorized in this section, we hold that such a charge is within the general contemplation of this broadly worded statute. In so construing this statute we note, in addition to the emphasized language, that "water facilities" is defined in subsection 31–35–401(7), C.R.S.1973 (1981 Supp. to 1977 Repl.Vol. 12) to include

"any one or more works and improvements used in and as a part of the collection, treatment or distribution of water for the beneficial uses ... including construction, operation, and maintenance of a system of raw and clear water and distribution storage reservoirs, deep and shallow wells, pumping, ventilating, and gauging stations, inlets, tunnels, flumes, conduits, canals, collection, transmission, and distribution lines, infiltration galleries, hydrants, meters, filtration and treatment plants and works, power plants, all pumping, power, and other equipment and appurtenances, all extensions, improvements, remodeling, additions, and alterations thereof, and any and all rights or interests in such works and improvements; ..."

When read in the full context of Art. 35 of Title 31, C.R.S.1973 (Repl.Vol. 12), these

provisions reveal that the General Assembly intended to give municipalities broad, general powers to construct, improve and extend all the facilities necessary to operate a viable water system, and that this power includes authorization to accumulate a fund for future development. There is no indication that municipalities are limited to the use of revenue bonds to finance future acquisition and construction.

That Arvada may take advantage of the powers granted by section 31–35–402(1)(f) is settled by reference to Chapter 12.1 of its Charter, which permits the City to

"have and exercise with respect to all utilities and franchises, all municipal powers, including without limitation, all powers now existing and which may be hereafter provided by the ... Statutes of the State of Colorado."

There being no other Charter provision or ordinance superseding or limiting the powers granted in subsection 31–35–402(1)(f), it is adequate to support Arvada's development fee.

■ Class II also claims that Arvada's fee is unconstitutional for several other reasons. First it argues that the ordinance constitutes unconstitutional class legislation because it imposes a greater burden on present, as opposed to past, connectors. As we have stated on numerous occasions, a statute is presumed to be constitutional and the party challenging its constitutionality bears the burden of proof. Further, if a statute is susceptible of different interpretations, one of which comports with constitutional requirements, the constitutional construction must be adopted. *People in the Interest of C.M.,* 630 P.2d 593 (Colo. 1981). Appellants failed to meet this burden.

■ The imposition of a development fee on new users is rationally related to the purpose, prominent in modern legislation, of making new development pay its own way. As stated by the trial court:

"This procedure of assessing a one-time development fee against new connectors to the water system and of increasing the amount of that fee pursuant to revised

estimates of projected capital needs is consistent with Arvada's obligation to maintain and improve its water system for the benefit of its water users."

The purpose of Arvada's ordinance being legitimate and the development fee being rationally related to that purpose, we hold that Arvada has not infringed upon the equal protection rights of its new residents.

■ Class II also challenges the ordinance on the grounds that it is void for vagueness because it does not specify the purposes for which the development fees are to be used. The trial court found that the funds were obviously intended for use in connection with Arvada's water system and therefore Class II's argument on this point was without merit. We agree. None of the remaining deficiencies alleged by Class II render the ordinance incomprehensible to a person of common intelligence, *Clark v. People,* 176 Colo. 48, 488 P.2d 1097 (1971).

In conclusion we hold that Arvada was properly acting within its discretion in enacting the ordinance assessing a development fee against its own new connectors.

## PHASE III

■ In this phase, Sub-class II–A is contesting the proper distribution of those system development charges deposited in the escrow account since January 1, 1973. Our disposition of Phase II requires that the fees collected since April 1, 1975, be turned over to Arvada. For the reasons stated below we hold that the fees collected prior to that time are to be returned to the persons or entities who paid them.

Class II–A argues that the fees collected before 1975 belong to the current owners of the property for which an SDC was paid rather than those persons who originally paid them. In support of their position, these users claim that the original payers of the SDC simply passed this cost on to subsequent buyers of the properties. Therefore, returning the SDC to the original payers would give them an unearned windfall.

It is possible that the original payers of the SDC simply tacked the fee amount onto the sales prices of their homes. However, Class II–A has presented no evidence that this was actually the case. Its only evidence on this point was some documentation of a general increase in the cost of homes in Arvada since 1973. However, nothing was presented which conclusively links these increased home costs to the imposition of the SDC. There being so many other factors which could be responsible for the increases, this court will not speculate on the exact causes.

Barring evidence that the original payers have in fact recovered their SDC's or that they have assigned their rights thereto, we hold that they are entitled to a refund of the fees they paid prior to April 1, 1975. The fee was a personal payment made to obtain water service. Although related to the land, it does not run with the land. Just because the original payers sold their property, they should not now be deprived of a refund of those amounts they had to pay to Arvada for deposit in the escrow fund. As stated in *Perlmutter's, Inc. v. Ancell, et al.,* 153 Colo. 149, 385 P.2d 123, 125 (1963),

> "The present controversy involves not so much a search for the so-called 'equities' of the case, but a proper determination of the legal rights of the parties. *Perlmutter's, Inc., paid the fee, and is thus entitled to the refund thereof,* unless it later assigned its right thereto."

## CONCLUSION

We hold that the SDC is inapplicable to users in the Arvada water system and thus the Board has no further claim to the escrowed funds. As between Arvada and its water customers, those fees collected prior to April 1, 1975 shall be returned to the persons who paid them. Those collected subsequently belong to Arvada.

The trial court's rulings granting the summary judgment motions are affirmed.