No. 48,007

CENTRAL FINANCE CO., INC., *Appellant*, v. GERALD D. STEVENS AND
DEBORAH STEVENS, *Appellees.*

(558 P. 2d 122)

2

Opinion filed December 11, 1976.

*Joel B. Short,* of Short and Short, of Fort Scott, argued the cause, and *Charles Gentry,* of the same firm, was with him on the brief for the appellant.

No appearance was made on behalf of the appellees.

The opinion of the court was delivered by

PRAGER, J.: This is an action brought by a finance company to recover a deficiency judgment on a promissory note following repossession and sale of an automobile in which the finance company had a security interest. The sole issue presented in the case is whether the plaintiff-appellant, Central Finance Company, Inc., was precluded from obtaining both possession of the collateral and a deficiency judgment under the provisions of the Kansas Uniform Consumer Credit Code (K. S. A. 16a-1-101 through 16a-9-102). The facts are undisputed and were stipulated by the parties to be as follows: On June 25, 1973, plaintiff, Central Finance Company, Inc., agreed to loan defendants, Gerald D. Stevens and Deborah Stevens, the sum of $624.00 for the purchase of a 1968 Ford station wagon from Cox Motors of Pleasanton, Kansas. The Stevenses were not referred to Central Finance Company by Cox Motors but independently contacted the finance company with whom they had had no prior dealings. Further there had been no prior contact either of a personal or corporate nature between Central Finance and Cox Motors. At the time of the loan, the Stevenses executed their promissory note to Central Finance with repayment of the $624.00 to be made in twelve (12) installments. The Stevenses secured payment of the note by executing a security agreement granting Central Finance a security interest in the automobile to be purchased. Central Finance prepared a draft in the amount of $507.57 payable to "Gerald and Debra Stevens and Cox Motors", and delivered the draft to the Stevenses, who endorsed the same, presented it to the seller, and

received title to the automobile with Central Finance's name appearing on the title as lienholder. During the spring of 1974 the Stevenses defaulted and failed to make the payments required by the promissory note. On request of Central Finance they voluntarily surrendered control and possession of the automobile which was the collateral covered by the security agreement of June 25, 1973. At the time of repossession the amount owed on the note was $450.87. After notice to the Stevenses the automobile was sold on March 21, 1974, for the sum of $231.26 from which was deducted the sum of $58.26 for repairs necessary to prepare the automobile for sale. The remaining credit of $173.00 was applied to the indebtedness owed to Central Finance with the result that on March 21, 1974, the Stevenses owed Central Finance a deficiency balance of $277.87. An action was thereafter filed by Central Finance in small claims court of Linn County, Kansas, and judgment by default was rendered against the Stevenses on June 20, 1974, in the sum of $300.00, representing the deficiency balance claimed by Central Finance from the Stevenses with accrued interest. The Stevenses appealed the small claims court decision to the district court of Linn county and were granted a trial *de novo* before the Honorable Don Musser, the assigned district court judge.

The district court ruled in favor of the Stevenses holding that the transaction between Central Finance and the Stevenses was a "consumer credit sale" and that, consequently, Central Finance was precluded from judgment for a deficiency balance following repossession of the automobile. The district court, in addition to vacating the $300.00 small claims court judgment in favor of Central Finance, entered judgment against Central Finance for $100.00 damages and $330.00 attorney fees. It is from this decision that the present appeal is taken.

In district court the defendants Stevens moved to dismiss this appeal for the reason that the amount in controversy is less than the $500.00 jurisdictional amount required by K. S. A. 60-2102 (*a*) (4) to vest in the supreme court jurisdiction to hear appeals from a final decision in actions to recover money. Since the jurisdiction of this court has been challenged, we deem it necessary to determine at the outset whether we have jurisdiction to determine the appeal.

The controlling statute is K. S. A. 60-2102 (*a*) (4) which provides in substance that the appellate jurisdiction of the supreme

court may be invoked by appeal as a matter of right from a final decision in any action, except that in an action to recover money, the amount in controversy must be in excess of $500.00. We must determine whether or not the amount in controversy exceeds the $500.00 limitation. As pointed out above the plaintiff's claim was in the amount of $300.00. The court awarded to the defendants a judgment for $100.00 statutory damages and attorney fees in the amount of $330.00, as authorized and provided for in K. S. A. 16a-5-201. Decisions of this court handed down under the old code of civil procedure which was in effect prior to January 1, 1964, established guiding principles which in our judgment vest jurisdiction to hear the appeal in the present case.

*Stewart v. Wright*, 124 Kan. 612, 261 Pac. 581, declares that in determining the amount in controversy for supreme court jurisdiction, the plaintiff may add the amount of his claim to the amount of the judgment rendered against him on a defendant's counterclaim to bring the case within the jurisdiction of this court. In *Gants v. National Fire Ins. Co.*, 127 Kan. 251, 273 Pac. 406, this court held that attorney fees awarded pursuant to statute may be considered in determining the amount in controversy on the appeal. We have concluded that the guiding principles set forth in *Stewart* and *Gants* should be applied in determining the jurisdiction of this court in this case. Following those cases the matters properly to be considered in determining the amount in controversy in this case are the plaintiff's claim of $300.00 and the defendants' judgment against plaintiff for $100.00 statutory damages and $330.00 attorney fees. Added together these items amount to $730.00 thus exceeding the statutory jurisdictional amount of $500.00. It follows that this court has jurisdiction to entertain this appeal.

We turn now to consider the issue raised by the plaintiff on the appeal. In order to determine this case it is necessary for the court to construe for the first time certain sections of the UCCC. We must first note the provisions of 16a-5-103, which prohibit deficiency judgments in certain consumer credit transactions. That section provides in pertinent part as follows:

"16a-5-103. (UCCC) **Restrictions on deficiency judgments.** (1) This section applies to a deficiency on a consumer credit sale of goods or services and on a consumer loan in which the lender is subject to defenses arising from sales (section 16a-3-405); a consumer is not liable for a deficiency unless the

creditor has disposed of the goods in good faith and in a commercially reasonable manner.

"(2) If the seller repossesses or voluntarily accepts surrender of goods which were the subject of the sale and in which he has a security interest, the buyer is not personally liable to the seller for the unpaid balance of the debt arising from the sale of a commercial unit of goods of which the cash sale price was one thousand dollars ($1,000) or less, and the seller is not obligated to resell the collateral unless the buyer has paid sixty percent (60%) or more of the cash price and has not signed after default a statement renouncing his rights in the collateral.

"(3) If the seller repossesses or voluntarily accepts surrender of goods which were not the subject of the sale but in which he has a security interest to secure a debt arising from a sale of goods or services or a combined sale of goods and services and the cash price of the sale was one thousand dollars ($1,000) or less, the buyer is not personally liable to the seller for the unpaid balance of the debt arising from the sale, and the seller's duty to dispose of the collateral is governed by the provisions on disposition of collateral (section 84-9-504) of the uniform commercial code.

"(4) If the lender takes possession or voluntarily accepts surrender of goods in which he has a security interest to secure a debt arising from a consumer loan in which the lender is subject to defenses arising from sales (section 16a-3-405) and the net proceeds of the loan paid to or for the benefit of the debtor were one thousand dollars ($1,000) or less, the debtor is not personally liable to the lender for the unpaid balance of the debt arising from the loan and the lender's duty to dispose of the collateral is governed by the provisions on disposition of collateral (section 84-9-504) of the uniform commercial code."

Section (1) states that this statutory restriction on deficiency judgments applies only to a deficiency either on a "consumer credit sale" or on a "consumer loan" in which the lender is subject to defenses arising from sales. (16a-3-405.) We must first determine whether the transaction between Central Finance and the Stevenses was a "consumer credit sale" or "consumer loan." The trial court held that the transaction between Central Finance and the Stevenses was a "consumer credit sale" and that consequently Central Finance was precluded from obtaining a deficiency judgment following repossession of the automobile. The trial court was in error. The term "consumer credit sale" is defined in K. S. A. 16a-1-301 (11) (a) as follows:

"(11) 'Consumer credit sale':

"(a) Except as provided in paragraph (b), a 'consumer credit sale' is a sale of goods, services, or an interest in land in which

"(i) credit is granted either by a seller who regularly engages as a seller in credit transactions of the same kind or pursuant to a credit card other than a lender credit card,

"(ii) the buyer is a person other than an organization,

"(*iii*) the goods, services, or interest in land are purchased' primarily for a personal, family, household, or agricultural purpose,

"(*iv*) either the debt is payable in installments or a finance charge is made, and

"(*v*) with respect to a sale of goods or services, the amount financed does not exceed twenty-five thousand dollars ($25,000)."

It is important to note that in order for a particular transaction to fall within the definition of a "consumer credit sale" it must be an actual sale of goods, services, or an interest in land. In this case the transaction between Central Finance and the Stevenses was not a sale. It was a loan. The sale was consummated between Cox Motors as seller and the Stevenses as buyers. Hence the trial court was in error in holding that the transaction between Central Finance and the Stevenses was a "consumer credit sale."

The transaction between Central Finance and the Stevenses does, however, fall within the definition of a "consumer loan" as defined in K. S. A. 16a-1-301 (14) in the following language:

"16a-1-301. . . .

"(14) 'Consumer loan':

"(*a*) Except as provided in paragraph (*b*), a 'consumer loan' is a loan made by a person regularly engaged in the business of making loans in which

"(*i*) the debtor is a person other than an organization;

"(*ii*) the debt is incurred primarily for a personal, family, household, or agricultural purpose;

"(*iii*) either the debt is payable in installments or a finance charge is made; and

"(*iv*) either the amount financed does not exceed twenty-five thousand dollars ($25,000) or the debt, other than one incurred primarily for an agricultural purpose, is secured by an interest in land."

In this case it is undisputed that the loan made by Central Finance to the Stevenses was made by one regularly engaged in the business of making loans to a person other than an organization and was made primarily for a personal, family, household, or agricultural purpose. The debt was payable in installments and was for an amount less than $25,000. It necessarily follows that the provisions of the UCCC governing consumer loans rather than consumer credit sales are applicable in determining the rights of the parties in this case.

Turning again to 16a-5-103 we note that subsection (4) of the statute provides in substance that if a *lender* takes possession of the collateral, he is precluded from obtaining a deficiency judgment on a "consumer loan" where two conditions exist: (1) The lender is subject to defenses arising from sales under 16a-3-405,

and (2) the amount of the loan is $1,000.00 or less. It is undisputed in this case that the amount of the loan from Central Finance to the Stevenses was less than $1,000.00. Hence the determining factor must be whether Central Finance as a lender under a consumer loan was subject to defenses arising from the sale under the provisions of 16a-3-405. That section of the UCCC lists five circumstances where a lender may be subject to defenses which may be asserted by the consumer against the seller:

"16a-3-405. (UCCC) **Lender subject to defenses arising from sales and leases.**

"(1) A lender, . . . who, . . . makes a consumer loan for the purpose of enabling a consumer to buy . . . from a particular seller . . . goods or services, other than primarily for an agricultural purpose, is subject to all claims and defenses of the consumer against the seller . . . arising from that sale . . . of the goods and services if

"(a) the lender knows that the seller . . . arranged, for a commission, brokerage, or referral fee, for the extension of credit by the lender;

"(b) the lender is a person related to the seller . . . unless the relationship is remote or is not a factor in the transaction;

"(c) the seller . . . guarantees the loan or otherwise assumes the risk of loss by the lender upon the loan;

"(d) the lender directly supplies the seller . . . with the contract document used by the consumer to evidence the loan, and the seller . . . significantly participates in the preparation of the document; or

"(e) the loan is conditioned upon the consumer's purchase . . . of the goods or services from the particular seller . . . but the lender's payment of proceeds of the loan to the seller . . . does not in itself establish that the loan was so conditioned.

. . . . . . . . . . .

"(5) Notwithstanding any of the foregoing, the participation of the lender . . . in any of the arrangements between seller and buyer to insure the perfection of the lender('s) . . . security interest shall not in itself establish a relationship described and controlled by subsection (1)."

As to the first four criteria, contained in section (1) (a), (b), (c), and (d), the stipulated facts clearly establish that Central Finance had no contact or relationship of any kind whatsoever with Cox Motors. Cox Motors had not referred the Stevenses to Central Finance nor had Cox prepared or helped to prepare the contract document used by the Stevenses to evidence the loan. As to the fifth criteria contained in paragraph (1) (e) there is no evidence in the stipulated facts to show that the loan from Central Finance to the Stevenses was conditioned upon the consumer purchasing the goods from the particular seller, Cox Motors. The fact that Central Finance's check for the proceeds of the loan was made

payable to Cox Motors as well as to the Stevenses does not in itself establish that the loan was so conditioned. In this regard the Kansas comment to section 16a-3-405 states as follows:

"2. . . . With respect to this last element, the lender's making the proceeds check payable to a particular dealer does not in itself make the transaction an 'all in the family' loan. Similarly, under subsection (5) any participation by the lender in the sales transaction solely to insure perfection of a security interest, such as notation of the lender's lien on a certificate of title, does not in itself make a 'direct loan' subject to the buyer's claims and defenses against the seller."

The fact that the proceeds check in this case was made payable to both the borrower and seller and that notation of the lender's security interest was made on the borrower's certificate of title did not create an "all in the family" loan. Creditors must be permitted to perfect their security interests when they make *bona fide* direct loans under the provisions of 16a-3-405. The statute is intended only to penalize lenders and sellers who cooperate in an "all in the family" loan. If this interpretation is not given to the UCCC, a Kansas lender who does not have any contact with the seller of consumer goods will be unable to perfect and protect his security interest without becoming entangled in the provisions of 16a-3-405.

The Kansas Consumer Credit Code bestows distinct rights and duties upon sellers and lenders in consumer credit sales. By promotion and advertising, which encourages the consumer to purchase goods, the seller bears greater responsibility for the transaction as a whole and is precluded from recovering a deficiency judgment. A lender who is completely divorced from an "all in the family" type loan activity, is merely a spectator to the consumer credit sales transaction. While carefully regulated by the consumer credit loan provisions of the Kansas UCCC, a lender is not prohibited from recovering a deficiency judgment unless he falls within the provisions of K. S. A. 16a-3-405. In this case Central Finance did not make an "all in the family" loan and is not precluded from recovering a deficiency judgment on the unpaid balance of the debt arising from the loan. It should be noted that no issue has been raised as to the manner of disposition of the collateral which apparently was made in good faith and in a commercially reasonable manner as required by K. S. A. 84-9-504.

From what we have said above it follows that the district court erred in vacating the order of the small claims court of Linn county entered on June 20, 1974, which granted the plaintiff judgment

against the defendants in the sum of $300.00 and costs. The district court further erred in entering judgment against the plaintiff on the defendants' counterclaim since the plaintiff had not violated provisions of the UCCC which would entitle the defendants to such an award.

The judgment of the district court is reversed and the case is remanded with directions to the district court to enter judgment in favor of the plaintiff in the amount of $300.00 plus interest on that amount from June 20, 1974, the date judgment was entered in the small claims court of Linn county.