(844 P.2d 764)

No. 67,837

BERNARD HALLORAN and DELLA HALLORAN, *Appellees/Cross-Appellants,* v. NORTH PLAZA STATE BANK, *Appellant/Cross-Appellee.*

Opinion filed January 15, 1993.

*David L. Miller,* of David L. Miller Law Office, of Topeka, for the appellant/cross-appellee.

*Lynn D. Lauver,* of Lauver Law Office, of Topeka, for the appellee/cross-appellant.

*Charles N. Henson,* of Davis, Wright, Unrein, Hummer & McCallister, of Topeka, for amicus curiae The Kansas Bankers Association.

Before BRISCOE, C.J., PIERRON, J., and M. KAY ROYSE, District Judge, assigned.

ROYSE, J.: This case arises out of a closed-end consumer loan which plaintiffs' (Bernard and Della Hallorans') grandson Eric D. Halloran obtained from North Plaza State Bank (Bank) on June 23, 1989. Eric took the loan to refinance a prior loan and to pay taxes. The note was secured by a 1979 Subaru station wagon and was guaranteed by Bernard Halloran.

Eric defaulted on the loan and, on September 29, 1989, filed for bankruptcy. After the default, Eric surrendered the car to the Bank and the Bank disposed of the car through a private sale. The Bank did not give notice to plaintiffs or Eric that the collateral would be sold or the date on which it would be sold.

The Bank applied the proceeds of the sale to the balance remaining on the loan, but a deficiency balance remained. The Bank then debited plaintiffs' checking account in the amount of $800 and applied that to the outstanding loan balance. On March 9, 1990, plaintiffs and Eric signed a second note with the Bank for the purpose of paying off the June 1989 note. Eric paid the balance of the March 1990 note in full.

The note form used by the Bank contained a provision for attorney fees as an additional term of the security agreement. That provision stated that, in the event of a default:

"You [The Bank] may apply the proceeds of the disposition to your reasonable expenses for realizing on a security interest (including costs of repossession, attorneys' fees (if permitted), repairs (if necessary) and costs of sale) and then to payment of the secured obligations."

Plaintiffs filed this lawsuit in March 1991. They claimed the sale of the collateral had been handled in a commercially unreasonable way. They also claimed the Bank's provision regarding attorney fees violated K.S.A. 16a-2-507.

The district court granted summary judgment to the plaintiffs. The court concluded that the Bank's attorney fee provision violated 16a-2-507 and assessed a $200 penalty. The court also ruled the Bank had not disposed of the collateral in a commercially reasonable manner, as required by K.S.A. 84-9-504(3), and ordered the Bank to pay $1,272.68 to plaintiffs. Finally, the court ordered the Bank to pay plaintiffs $100 in attorney fees, pursuant to K.S.A. 16a-5-201(8).

The Bank appeals the district court's decision that the attorney fee provision violated 16a-2-507. That provision states: "With respect to a consumer credit transaction, the agreement may not provide for the payment by the consumer of attorney's fees. A provision in violation of this section is unenforceable." The Uniform Consumer Credit Code goes on to provide that, if a creditor violates 16a-2-507, the consumer has a cause of action for actual damages and for recovery of a penalty in the amount of $100 to $1000. K.S.A. 16a-5-201.

There is no question that this was a consumer credit transaction. The Bank, however, argues the clause "if permitted" limits its provision for attorney fees. Because Kansas forbids such a provision, the Bank argues, the provision in the note was without effect.

The Bank's argument ignores the unqualified nature of the prohibition contained in 16a-2-507. The statute includes no exceptions as it states that an agreement may *not* provide for attorney fees. In addition, the Bank's argument ignores the penalty provision of 16a-5-201, a provision which penalizes inclusion of an attorney fee provision regardless of whether the creditor actually collects fees.

The Bank also relies on a provision of the bankruptcy code, 11 U.S.C. § 506(b) (1984):

"To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose."

This provision has been construed to allow an award of fees in bankruptcy court to an oversecured creditor, notwithstanding contrary Kansas state law. *In re American Metals Corp.,* 31 B.R. 229 (Bankr. D. Kan. 1983).

The Bank also relies on Clark, The Law of Secured Transactions Under the Uniform Commercial Code ¶ 6.01 (2d ed. 1988), p. 6-4:

"A strong argument can be made that attorney's fee clauses in security agreement forms are enforceable in bankruptcy by an oversecured Article 9 creditor, even though state law prohibits such clauses outside bankruptcy. In other words, § 506(b) is a direct federal grant to the creditor that pre-

empts conflicting state law. The legislative history strongly suggests such a conclusion. Thus, secured creditors in non-attorney's fee states should consider including in their security agreement forms a clause imposing reasonable attorney's fees triggered by the debtor's bankruptcy."

Even if 11 U.S.C. § 506(b) is viewed as authorizing fee awards despite contrary state law provisions, the federal statute does not come into play here. 11 U.S.C. § 506(b) applies only to oversecured creditors. At no time was the Bank an oversecured creditor. Thus, the Bank never came within the scope of 11 U.S.C. § 506(b).

It is also important to acknowledge one of the underlying purposes of Kansas' prohibition on attorney fees. Both 16a-2-507 and K.S.A. 58-2312 reflect concern that an attorney fee provision "mulcts debtors for default on a sum not necessarily compensatory," and can be used "to fleece necessitous debtors." *Iola State Bank v. Biggs,* 233 Kan. 450, 462, 662 P.2d 563 (1983) (quoting *Young v. Nave,* 135 Kan. 23, 25, 10 P.2d 23 [1932]). Professor Clark implicitly recognizes the potential dangers of a broad attorney fee provision. He even suggests that creditors include an attorney fee provision "triggered by the debtor's bankruptcy." Clark, ¶ 6.01, at p. 6-4.

Under the facts of this case, the district court did not err in applying 16a-2-507.

Plaintiffs cross-appeal from the decision of the district court. They raise two issues: (1) Did the court err in holding that K.S.A. 16a-5-103 was inapplicable; and (2) did the court err in awarding plaintiffs only $100 in fees?

The district court held that the Bank disposed of the collateral in a commercially unreasonable manner because it failed to provide the notice of disposition required by K.S.A. 84-9-504(3). The court awarded plaintiffs a penalty computed under K.S.A. 84-9-507(1). Plaintiffs contend that, instead of awarding a penalty, the district court should have applied 16a-5-103 to bar the Bank from collecting any deficiency as a result of the default on the June 1989 note.

By its terms, 16a-5-103 is limited to a deficiency on a consumer loan "in which the lender is subject to defenses arising from sales (section 16a-3-405)." K.S.A. 16a-3-405 applies only to so-called "all in the family loans" where a lender "makes a consumer loan

for the purpose of enabling a consumer to buy or lease from a particular seller or [lessor]." See *Central Finance Co., Inc. v. Stevens,* 221 Kan. 1, 8, 558 P.2d 122 (1976).

In this case, Eric and Bernard Halloran took out the first loan so Eric could refinance a previous loan and pay taxes. There is no evidence the loan was made to enable them to make purchases. Thus, 16a-3-405 would not apply.

The 1990 Kansas Comment to 16a-5-103 makes clear that the UCC controls in the event of default, except to the extent the UCC changes the parties' rights:

"1. Where there has been a default with respect to a secured consumer credit transaction, the rights of the creditor and consumer are controlled by part 5 (Default) of UCC article 9 (K.S.A. 84-9-501, et seq.), except to the extent that such rights are changed by this act (see K.S.A. 84-9-203)."

Having determined that 16a-5-103 did not apply, the district court did not err by proceeding under 84-9-507(1).

Plaintiffs' second argument on cross-appeal is that the district court erred in awarding $100 in fees after plaintiffs had requested $2,995 in fees. Plaintiffs argue that all of their fees should be ordered paid by the Bank, even though the total fee amount reflects work done on non-UCC claims.

The district court ruled that 16a-5-201(8) provides for attorney fees attributable to claimed violations of the UCCC. That conclusion is consistent with the statutory language: K.S.A. 16a-5-201(8) specifically authorizes an award of costs and attorney fees where there have been creditor violations of K.S.A. 16a-1-101 through K.S.A. 16a-9-102.

The district court is to be considered an expert on the matter of reasonable compensation. *Stafford v. Karmann,* 2 Kan. App. 2d 248, 251, 577 P.2d 836 (1978). The district court here considered the attorney fees question, the only UCCC violation, was a "minor part of plaintiffs' case" which warranted a "minimal" expenditure of time. Plaintiffs have failed to demonstrate any abuse of discretion in the district court order for fees and costs.

Plaintiffs' application for attorney fees on appeal is denied. Plaintiffs' assertion that 16a-5-201(8) mandates an award of fees on appeal is not persuasive. We do not find that the Bank's appeal in this case was frivolous and, therefore, there is no basis for an

allowance of fees under Rule 7.07(c) (1992 Kan. Ct. R. Annot. 37).

Affirmed.