Amanda DE LA ROSA and John T. Bradford, Plaintiffs–Appellants,

v.

WESTERN FUNDING, INC., Defendant–Appellee.

No. 00CA0731.

Colorado Court of Appeals, Div. II.

April 12, 2001.

Clayton and Stone, L.L.C., F. Brittin Clayton, III, April Bennett Stone, Boulder, CO, for Plaintiffs–Appellants.

Jorge E. Castillo, P.C., Jorge E. Castillo, Denver, CO, for Defendant–Appellee.

Opinion by Judge CASEBOLT.

In this action seeking damages and other relief for alleged violations of the Uniform Consumer Credit Code (UCCC), plaintiffs, Amanda De La Rosa and John T. Bradford, appeal the summary judgment in favor of defendant, Western Funding, Inc. We affirm.

Plaintiffs purchased vehicles from a used-car dealership by signing a form denominated as a Disclosure Statement, Promissory Note, and Security Agreement. The document also contained a bill of sale and various contract terms and provisions, including warranties. The payment provision contained a promise to pay the dealership in installments, with an interest rate of 21% on the unpaid

balance. The dealership assigned its rights in the agreement to defendant, who paid the dealership a discounted sum in consideration for the assignment and collected all of the payments due.

Asserting that these transactions were actually consumer loans made by an unlicensed lender that could carry a maximum of 12% interest under the UCCC, § 5–2–201(1), C.R.S.2000 (originally enacted at Colo. Sess. Laws 1971, ch. 207, § 73–3–201(1) at 807), plaintiffs commenced this action against defendant. They sought class certification, monetary damages, and an order precluding defendant from charging 21% interest.

After filing responsive pleadings, defendant filed a motion for summary judgment, and plaintiffs filed a cross-motion for determination of questions of law. Following a hearing, the trial court concluded that the transactions at issue were consumer credit sales, and that defendant, as an assignee of the seller, was permitted to charge 21% interest. Accordingly, the court granted defendant's motion and denied plaintiffs' cross-motion. Because the issue of class certification remained pending, the parties agreed to dismiss the request for class certification without prejudice. The trial court then entered a final judgment, and this appeal followed.

## I.

The UCCC contains two interest rate limitations relevant here: a 12% per annum limit for consumer loans made by unlicensed lenders, § 5–2–201(1); and a 21% per annum limit for licensed lenders and sellers of goods in a consumer credit sale, § 5–2–201(2)(b), C.R.S.2000 (originally enacted at Colo. Sess. Laws 1981, ch. 70, § 5–3–508(b) at 391), and for assignees of such sellers. Section 5–1–301(42), C.R.S.2000 (originally enacted at Colo. Sess. Laws 1971, ch. 207, § 73–2–107 at 781). Plaintiffs contend that, because defendant is not a licensed lender or a seller of goods, it can charge 21% interest only if it takes an assignment of a consumer credit obligation that is originally payable to a seller. They assert that, regardless of its form, the purchase transaction was a consumer loan, because the dealership did not extend credit to plaintiffs, defendant was the true lender, and the assignment was merely contrived to allow defendant to charge 21% interest. Plaintiffs contend the substance of the transaction should govern and defendant should only be allowed to charge 12% interest. We disagree.

■ Appellate review of a summary judgment is *de novo*. *Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board*, 901 P.2d 1251 (Colo.1995). Summary judgment is proper only when the pleadings, affidavits, depositions, or admissions show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56; *Civil Service Commission v. Pinder*, 812 P.2d 645 (Colo.1991).

■ Our review of the trial court's interpretation of a statute is also *de novo*. *Rowell v. Clifford*, 976 P.2d 363 (Colo.App. 1998). When interpreting a statute, we attempt to implement the intent of the General Assembly. To discern that intent, we look first to the plain language of the statute and interpret statutory terms in accordance with their commonly accepted meanings. *Sears v. Romer*, 928 P.2d 745 (Colo.App.1996). We must avoid a strained or forced construction of a statutory term, and we must look to the context in which a statutory term is employed. *Miller v. Byrne*, 916 P.2d 566 (Colo. App.1995).

As applicable here, under the UCCC, a consumer loan was defined as:

a loan made or arranged by a person regularly engaged in the business of making loans in which:

(a) The debtor is a person other than an organization;

(b) The debt is incurred primarily for a personal, family, or household purpose;

(c) Either the debt is payable in installments or a loan finance charge is made; and

(d) Either the principal does not exceed twenty-five thousand dollars or the debt is secured by an interest in land. . . .

Section 5–1–301(15)(a), C.R.S.2000 (originally enacted at Colo. Sess. Laws 1971, ch. 207,

§ 73–3–104(1) at 805, and Colo. Sess. Laws 1981, ch. 70, § 5–2–104(1) at 388, with modifications not relevant here).

A consumer credit sale was defined as:

a sale of goods, services, a mobile home, or an interest in land in which:

(a) Credit is granted or arranged by a person who regularly engages as a seller in credit transactions of the same kind;

(b) The buyer is a person other than an organization;

(c) The goods, services, mobile home, or interest in land are purchased primarily for a personal, family, or household purpose;

(d) Either the debt is payable in installments or a credit service charge is made; and

(e) With respect to a sale of goods or services, the amount financed does not exceed twenty-five thousand dollars. . . .

Section 5–1–301(11)(a), C.R.S.2000 (originally enacted at Colo. Sess. Laws 1971, ch. 207, § 73–2–104(1) at 780, and Colo. Sess. Laws 1981, ch. 70, § 5–2–104(1) at 386, with modifications not relevant here).

■ Here, the individual plaintiffs desired to purchase vehicles from the dealership for personal, family, or household purposes, but needed financing to do so. The dealership, acknowledged by the parties to engage regularly in credit transactions of the kind involved here, indicated that it would not extend credit to plaintiffs, but that it could arrange credit for them. To that end, the dealership forwarded plaintiffs' credit applications and other information concerning the potential purchase to defendant for review.

Defendant conducted a credit check on plaintiffs and agreed to finance the purchases. Plaintiffs signed the Disclosure Statement, Promissory Note, and Security Agreement designating the dealership as payee, which allowed plaintiffs to pay in installments. The purchase prices were under $25,000 each. The dealership then assigned its rights to defendant, an unlicensed lender. Plaintiffs thereafter made all of their payments to defendant.

■ We conclude that these transactions are consumer credit sales, not consumer loans. First, a characteristic that distinguishes loans from credit sales is that a credit sale must involve the sale of goods, services, or an interest in land. Without such a sale, the transaction will be considered a loan. *See Central Finance Co. v. Stevens,* 221 Kan. 1, 558 P.2d 122 (1976). It is undisputed that the transactions at issue here involved the sale of goods.

■ Second, in a true consumer loan transaction, the borrower usually has some direct contact with and receives money from the lender, even if the lender issues a check payable to the borrower and a seller of consumer goods to fund the loan. *See Peoples Finance & Thrift Co. v. Perry,* 30 Utah 2d 282, 516 P.2d 1400 (1973) (plaintiff borrowed money from a bank to purchase a vehicle, then used the proceeds of the loan to purchase vehicle in a cash transaction; court held the transaction between the bank and plaintiff was a consumer loan, not a consumer credit sale). It is undisputed here that plaintiffs did not receive any money directly from defendant, the credit was granted only for a specific purchase, and there was no direct contact between plaintiffs and defendant.

Further, plaintiffs signed promissory notes payable to the dealership; no notes or instruments of indebtedness were executed between defendant and plaintiffs; and defendant took possession of the notes only through assignments. *See First National Bank v. LaJoie,* 537 P.2d 1207 (Okla.1975) (where purchaser bought vehicle from dealer by conditional sales contract, court held transaction was a consumer credit sale, and a bank was merely an assignee of the agreement between seller and buyer because buyer dealt only with the dealer, installment sales contract was between buyer and seller, and buyer did not enter into an instrument of indebtedness with bank); *cf. Central Finance Co. v. Stevens, supra* (where finance company lent money to the purchasers of an automobile as borrowers, and borrowers executed promissory note to finance company and granted finance company a security interest in the automobile, transaction was a

consumer loan, not a consumer credit sale, because sale was consummated between car dealership as seller and borrowers as purchasers).

Hence, because the transactions were consumer credit sales and defendant took the contract rights as an assignee of the seller, defendant is legally entitled to charge 21% interest. *See* §§ 5–1–301(42) & 5–2–201(2)(b).

Plaintiffs' reliance on *Ford Motor Credit Co. v. Cenance,* 452 U.S. 155, 101 S.Ct. 2239, 68 L.Ed.2d 744 (1981), is misplaced. There, the Court determined that, under the federal Truth in Lending Act, the assignee, Ford Motor Credit, was, in substance, a lender subject to the disclosure requirements of that Act.

Here, there is no assertion of any violation of the Truth in Lending Act. Moreover, it is undisputed that defendant is subject to the terms of the UCCC, and there are no allegations that required information was not disclosed to plaintiffs. Further, the UCCC permits transactions to be structured in the manner used here. Thus, *Ford Motor Credit Co. v. Cenance, supra,* is inapposite.

## II.

Plaintiffs, nevertheless, contend that the assignments here are a sham and, thus, we should not honor the form of the transaction. Plaintiffs argue that defendant was the original and only true creditor in each of these transactions and, despite the designation of the dealership as the payee of the promissory notes, the dealer had no intention to, and did not, extend any credit to plaintiffs.

However, the statutory language defining a consumer credit sale specifically allows the seller to either grant credit or arrange for credit. It does not require the seller itself to extend credit. *See* § 5–1–301(11)(a)(I), C.R.S.2000, (originally enacted at Colo. Sess. Laws 1971, ch. 207, § 73–2–104(1)(a) at 780). The intention of the seller is, therefore, irrelevant.

Furthermore, by defining "seller" to include an assignee of the seller's right to payment, § 5–1–301(42), the UCCC essentially allows an assignee of the seller to be treated the same as a seller, and thus charge 21% interest.

Our view is reinforced by the fact that defendant takes the assignment subject to claims that plaintiffs could assert against the dealership. If these transactions were in fact consumer loans in which defendant loaned plaintiffs the money to purchase the vehicles and obtained a promissory note payable to it, defendant would likely be a holder in due course and would not be subject to any of the claims or defenses that the plaintiffs might have against the seller. *See* § 4–3–302, C.R.S.2000. Because of its status as an assignee of the seller's rights in this consumer credit sale, however, by statute defendant takes the right to payment subject to any claims or defenses that the plaintiffs could assert against the seller. *See* § 5–3–303, C.R.S.2000 (originally enacted at Colo. Sess. Laws 1975, ch. 60, § 5–2–403 at 241).

Therefore, because the UCCC allows these types of dealings, and both rights and responsibilities flow from the transaction being structured as an assignment, the assignments are not a sham.

## III.

Plaintiffs, nevertheless, claim that summary judgment was not appropriate because a jury could conclude that the dealership was a "straw man payee," and the transaction was structured so defendant could "evade" the 12% interest limitation on unlicensed lenders. In essence, they assert that there are genuine issues of material fact in dispute as to whether there was a bona fide assignment. We disagree.

Plaintiffs' conclusory characterization of the facts does not change them, or the legal analysis. Merely because plaintiffs say the dealer was a straw man, and defendant is seeking improperly to evade an interest limitation, does not make it so. As stated above, it is undisputed that plaintiffs each purchased vehicles from a dealership, which obtained a promise to pay in return for deferring part of the purchase price of the vehicles. Defendant then took possession of the right to payment through an assignment

from the dealership. None of these material facts is disputed.

Moreover, as we have previously noted, as we read the UCCC provisions at issue here, a seller in a consumer credit sale is permitted to arrange for credit, but still structure the transaction to designate itself as the creditor, and thereafter to assign its rights to payment. And, it is beyond dispute that the dealership was selling its vehicles, which were not owned in any sense by defendant.

Consequently, because the facts underlying the transactions are undisputed, summary judgment was appropriate. *See Civil Service Commission v. Pinder, supra.*

Based on our resolution of the summary judgment issue, we need not address plaintiffs' assertions regarding the denial of their cross-motion for determination of questions of law.

The judgment is affirmed.

PLANK and JONES, JJ., concur.