George ANEMA, Dick Bettinger, Merritt Bigelow, Douglas R. Crabb, James A. Duffy, James R. Howell, Royal Judd, Phil Onofrio, Laurence Peterson, Larry Priest, Allaida Rompies, and Steve Waugh, Plaintiffs–Appellants,

v.

TRANSIT CONSTRUCTION AUTHORITY, a body corporate and political subdivision of the State of Colorado; and Diana Boulter, Henry Solano, Howard B. Gelt, Richard S. Watt, Del Hawk, Richard C.D. Fleming, Joseph Cannata, and James H. Graebner, as members of the Board of Directors of the Transit Construction Authority, Defendants–Appellees.

No. 89SA45.

Supreme Court of Colorado, En Banc.

March 19, 1990.

Tallmadge, Tallmadge, Wallace & Hahn, P.C., David J. Hahn, John W. Smith and Cynthia A. Calkins, Denver, for plaintiffs-appellants.

Calkins, Kramer, Grimshaw & Harring, Richard L. Harring and Susan Burch, Denver, for defendants-appellees.

Justice ERICKSON delivered the Opinion of the Court.

This is an appeal[1] from the Denver District Court's order dismissing the appellants' complaint and upholding the validity of the Transit Construction Authority Act, sections 32–9.5–101 to –110, 16B C.R.S. (1988 Supp.).[2] The appellants challenged the Act on numerous constitutional grounds, all of which were rejected by the district court. We affirm.

## I.

The General Assembly created the Transit Construction Authority (TCA) in 1987 to establish a fixed guideway rapid transit system[3] in the Denver metropolitan area. The TCA was declared to be a "body corporate and a political subdivision of the state" but would "not [to] be an agency of state government ... [or] subject to administrative direction by any state department, commission, board, bureau, or agency." § 32–9.5–103.

A geographic area to be served by public rapid transit, called the "service area," was defined around the fixed guideway that was to connect the southeast business corridor to downtown Denver. §§ 32–9.5–102(5), –103. The financing of the operation of the TCA, and the development, con-

---

1. This court has jurisdiction over an appeal from the final judgment of a district court which decides the constitutionality of a statute. *See* § 13–4–102(1)(b), 6A C.R.S. (1987).

2. The Transit Construction Authority Act was originally enacted in 1987. Ch. 247, sec. 1, §§ 32–9.5–101 to –109, 1987 Colo.Sess.Laws 1241, 1241–46. The Act was amended by the addition of section 32–9.5–110 in 1988. Ch. 239, sec. 1, § 32–9.5–110, 1988 Colo.Sess.Laws 1157, 1157–58. The 1988 version of the statute was in force when the appellants filed their original complaint, was the version which was construed by the district court and is the one we consider

in this appeal. The Act was repealed in 1989, ch. 291, sec. 2, 1989 Colo.Sess.Laws 1320, 1320–21, but we conclude that this appeal is not moot because of the reasons developed below.

3. As defined by the Act, " '[f]ixed guideway rapid transit system' means that form of transportation employing passenger conveyances traveling on or within or suspended from tracks, rails, or cables or in any other mode fixed within a right-of-way, but the term does not include any system of buses operating in dedicated lanes on roads and streets." § 32–9.5–102(4), 16B C.R.S. (1988 Supp.).

struction, and operation of the system was to come from special assessments of commercial property within the service area, § 32–9.5–108(1)(a), and "employment assessment[s] not to exceed two dollars per month" to be paid by employers within the service area, § 32–9.5–108(1)(b).

Originally, the TCA was to "plan, finance, construct, and ... maintain and operate" the system. § 32–9.5–105. In 1988, however, the Act was amended by the addition of section 32–9.5–110, which prohibited the board of directors of the TCA from exercising any of the powers otherwise conferred by the Act except those "either directly related to completion of the planning phase of the development of the southeast corridor or to the administrative functioning of the board without first receiving approval for such exercise from the general assembly acting by bill...." Section 32–9.5–110(1)(a) also permitted the board of the TCA to "continue to levy the [employment] assessment established in section 32–9.5–108(1)(b)." However, the assessment on commercial property and, after March 31, 1989, the employment assessment, could not be exercised by the TCA without the approval of the General Assembly. § 32–9.5–110(1)(a), (b).

After the 1988 amendment, the appellants, who are owners of commercial property, employers, or employees within the service area determined by the TCA, filed this action in the district court seeking a determination that the Act was unconstitu-

tional under a number of provisions of the state and federal Constitutions. The appellees, the TCA and members of the TCA's board of directors, moved to dismiss the complaint, and the appellants moved for summary judgment. On January 4, 1989, the district court upheld the Act and granted judgment in favor of the appellees on all issues except the appellants' nineteenth claim for relief, which raised the issue of whether employers could pass the employment assessment on to their employees. The last claim for relief was dismissed without prejudice on January 19, 1989, pursuant to the motion of the appellants. This appeal followed.

## II.

■ The Act was repealed in 1989, effective August 1, 1989. Ch. 291, secs. 2, 3, 1989 Colo.Sess.Laws 1320, 1321. Although no taxes were apparently collected from assessments on commercial property, employment assessments were made and collected. In addition, appellants alleged in their complaint, and appellees do not deny, that efforts to collect unpaid employment assessments continue. *See* § 32–9.5–110(1)(b).[4]

Appellants' complaint alleged that some of the appellants are employers who have paid the employment assessment and seek a refund, while others are employers upon whom the assessment was levied, but who have not paid and who seek a declaration that the assessment need not be paid be-

---

4. In the same act that repealed the TCA Act, the General Assembly created a "mass transportation account":

**Mass transportation account.** There is hereby created in the state treasury a mass transportation account which shall consist of all of the unexpended revenues collected by the board of the transit construction authority as of August 1, 1989, which revenues were collected pursuant to the authority of such board to impose assessments on property or persons. Such revenues shall be transmitted to the state treasurer for deposit into a separate interest-bearing mass transportation account for the construction of mass transportation projects in the corridors from which such funds were collected. The expenditure of such funds shall only be made with the approval of the general assembly. Any other use of these funds shall require a two-thirds

majority vote of both houses of the general assembly. The mass transportation account created in this section shall accumulate interest and shall be kept separate from all other accounts in the state treasury, and it shall be identified separately from all other revenues in the state treasury. All reports, studies, plans, documents, books, financial records, audits, and any other information compiled by the transit construction authority shall be transferred to the director of research of the legislative council, and such information shall be identified separately from all other information relating to mass transportation issues and shall be made available to the public upon request.

Ch. 291, sec. 1, § 32–9.7–102, 1989 Colo.Sess. Laws 1320. The validity of section 32–9.7–102, 16B C.R.S. (1989 Supp.) is not before us.

cause it is invalid. Because appellants seek to recover funds already paid pursuant to assessment by the TCA, or seek a declaration that the assessments were invalid and need not be paid, we conclude that repeal of the Act does not make this appeal moot. *Olson v. Public Serv. Co.*, 190 Colo. 512, 514 n. 1, 549 P.2d 780, 782 n. 1 (1976) (repeal of section of workers' compensation law did not moot claimant's constitutional challenge where his rights were governed by the repealed section). However, our analysis is confined to the 1988 amended version of the statute, since that was the version in effect when the employment assessments were made and when the complaint was filed. We need not and do not address the validity of the Act as originally enacted in 1987.

### III.

The validity of the Act's employment assessment is challenged on numerous grounds that fall in two main categories: the assessment is unconstitutional because of the nature of the TCA and its board of directors or the way that the General Assembly created the TCA; and the assessment is invalid due to its own inherent characteristics.

■ The appellants first contend that the board of directors of the TCA is a special commission in violation of Colo. Const. art. V, § 35, which provides:

> **Delegation of Power.** The general assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatever.

We have defined a special commission as a " 'body or association of individuals separate and distinct from the city government; that is created for different purposes, or else created for some individual or limited object not connected with the general administration of municipal affairs.' " *Milheim v. Moffat Tunnel Improvement Dist.*, 72 Colo. 268, 282, 211 P. 649, 655

(1922) (quoting *In re Senate Bill Providing for a Board of Public Works*, 12 Colo. 188, 193, 21 P. 481, 482–83 (1889) (Elliott, J., concurring)), *aff'd*, 262 U.S. 710, 43 S.Ct. 694, 67 L.Ed. 1194 (1923). *Accord City & County of Denver v. Eggert*, 647 P.2d 216, 227 (Colo.1982) (board of county commissioners not a special commission).

The board of directors of the TCA, like the tunnel commission in *Moffat Tunnel Improvement District*, was the governing body of the TCA, a body corporate and political subdivision of the state, § 32–9.5–103. The TCA was created as a quasi-municipal corporation for a limited purpose having some but not all of the attributes of a municipal corporation. *See City of Aurora v. Aurora Sanitation Dist.*, 112 Colo. 406, 409, 149 P.2d 662, 664 (1944) (sanitation district was quasi-municipal corporation, being a public agency possessing such attributes of municipality as are necessary to attain its limited objectives); *People v. Letford*, 102 Colo. 284, 301–02, 79 P.2d 274, 281–82 (1938) (water conservancy district was quasi-municipal corporation).

The governing bodies of municipal or quasi-municipal corporations are not special commissions within the meaning of Colo. Const. art. V, § 35. *City & County of Denver v. Eggert*, 647 P.2d at 227; *City of Aurora v. Aurora Sanitation Dist.*, 112 Colo. at 418, 149 P.2d at 667; *People v. Letford*, 102 Colo. at 312, 79 P.2d at 288; *People v. Lee*, 72 Colo. 598, 606, 213 P. 583, 587 (1923); *Moffat Tunnel Improvement Dist.*, 72 Colo. at 282, 211 P. at 655. Therefore, the board of directors of the TCA is not a prohibited special commission.

### IV.

■ Appellants also argue that the TCA is a "service authority" under Colo. Const. art. XIV, § 17. Because TCA was not formed under the procedures of that constitutional provision (which require *inter alia* the approval of a majority of the qualified electors in the territory included in the service authority, § 17(1)(b)), the appellants claim that the Act is unconstitutional.

Implicit in appellants' argument is the assumption that, if the General Assembly *could* address a public concern such as the development of rapid transit by means of a service authority, then any political body the General Assembly creates to address the concern *must* be a service authority. We reject this assumption. Contrary to appellants' contention, nothing in article XIV, section 17 limits the power of the General Assembly to create political subdivisions other than service authorities.

Section 17(1)(a) states that "[t]he general assembly shall provide by statute for the organization, structure, functions, services, facilities, and powers of service authorities pursuant to the following requirements...." The appellants, stressing the use of the mandatory "shall," claim that this provision is a check on the power of the General Assembly to create political subdivisions of the state. We disagree. The plain meaning of the constitutional provision is to place limitations on the creation of service authorities only. The Act establishing the TCA does not purport to create a service authority. Therefore, the TCA is not inconsistent with the provisions of Colo. Const. art. XIV, § 17.

## V.

◼ Next, appellants contend that the Act violates the separation of powers provision of Colo. Const. art. III, because the General Assembly has assumed control over an executive agency. However, we have concluded that the TCA was a political subdivision of the state itself, a quasi-municipal corporation, and not an executive agency. Section 32–9.5–103 expressly provides that the TCA "shall not be an agency of state government and shall not be subject to administrative direction by any state department, commission, board, bureau, or agency." We therefore reject appellants' separation of powers argument.

## VI.

◼ The appellants claim that the Act is an unlawful delegation of legislative power in violation of the rule set forth in *People v. Giordano*, 173 Colo. 567, 570, 481 P.2d 415, 416 (1971): "It is a general rule of law that a legislative body may not delegate the power to make a law or define a law, *but it may delegate the power to determine some fact or state of things to effectuate the purpose of the law.*" (Emphasis added.) Insofar as the TCA was given the power to plan, that power is not exclusively legislative. Before a statute may be held unconstitutional for delegating legislative authority, it must appear that the power delegated is purely legislative. *People v. Lee*, 72 Colo. at 610, 213 P. at 589.

Insofar as the TCA was given the power to levy an employment assessment, there was no unlawful delegation without sufficient standards since the General Assembly provided the maximum amount of the assessment and the area within which employers must be located in order to be liable for the assessment. *"The legislature does not abdicate its function when it describes what job must be done, who must do it, and the scope of his authority."* *Giordano*, 173 Colo. at 571, 481 P.2d at 416 (emphasis in original) (quoting *Swisher v. Brown*, 157 Colo. 378, 388, 402 P.2d 621, 626 (1965)). We conclude that the Act did not constitute an unlawful delegation of legislative authority to the TCA.

## VII.

◼ Contrary to the appellants' argument, the Act does not constitute an unconstitutional interference with the home-rule powers of the City and County of Denver under Colo. Const. art. XX, §§ 1, 6. In analyzing the proper spheres of authority exercised by the legislature and home-rule municipalities, we have employed a three-part test. If the matter sought to be regulated is of statewide concern, the power of the General Assembly is plenary. *City & County of Denver v. State*, 788 P.2d 764 (Colo.1990); *City & County of Denver v. Board of County Comm'rs*, 782 P.2d 753, 762 (Colo.1989). If the matter is of local concern, both home-rule cities and the General Assembly may legislate, although an ordinance or charter provision of a home-rule city controls over a conflicting state statute. *City & County of Denver v.*

*State,* 788 P.2d 764. In matters of mixed local and statewide concern, a state statute supersedes an ordinance or charter of a home-rule city. *Id.* at 767.

Although they claim that "street improvements" have always been a local and municipal concern, appellants have not explained how either the planning or the employment assessment powers of the TCA conflict with any ordinance or charter provision of Denver. The Act does not authorize the TCA to construct or operate a transportation system within Denver without approval of the General Assembly, and this approval has not been given.

The light rail rapid transit system planned by the TCA extends from downtown Denver through the southeast business corridor into Douglas County, and its construction and operation would require cooperative efforts beyond city or county boundaries. We believe that the Act addresses a matter of mixed local and statewide concern, and the statute would control over a conflicting ordinance or city charter. *Denver & Rio Grande W. R.R. v. City & County of Denver,* 673 P.2d 354, 361 (Colo. 1983) (construction and apportionment of costs for viaduct was matter of mixed local and statewide concern; thus statute controlled over conflicting city charter provision). The Act is therefore distinguishable from the multiple county district found to violate Article XX in *Four–County Metropolitan Capital Improvement District v. Board of County Commissioners,* 149 Colo. 284, 369 P.2d 67 (1962).

## VIII.

██ Appellants also claim that the Regional Transportation District (RTD), TCA, and the City and County of Denver may not all coexist at the same time and provide the same or similar services to the same area, again citing *Four–County Metropolitan Capital Improvement District.* This argument is without merit. We have found *Four–County Metropolitan Capital Improvement District* distinguishable. In addition, during the existence of the TCA, the three entities provided quite different

services within the metropolitan area. There is no objection to more than one municipal or quasi-municipal corporation coexisting in the same area if they perform different functions. *City of Aurora v. Aurora Sanitation Dist.,* 112 Colo. at 410–11, 149 P.2d at 663–64.

## IX.

The appellants further allege that the Act is invalid because it constitutes "special legislation" in violation of Colo. Const. art. V, § 25, which provides in part:

**Special Legislation Prohibited.** The general assembly shall not pass local or special laws in any of the following enumerated cases, that is ... granting to any corporation, association or individual the right to lay down railroad tracks.... In all other cases, where a general law can be made applicable no special law shall be enacted.

The appellants do not contend that a general law could have been made applicable. Their attack centers on the prohibition against granting to a "corporation, association or individual the right to lay down railroad tracks...." The appellees point out that under *Whitsett v. Union Depot & Railroad Co.,* 10 Colo. 243, 247, 15 P. 339, 341 (1887), the prohibition on the legislature may not extend to delegating the power to a local entity such as a municipal corporation. We need not address this issue, however, since the 1988 amendment to the Act took away the TCA's power to construct or operate a fixed guideway transportation system. The employment assessments were made for planning and administrative purposes only, and not for construction or operation. § 32–9.5–110. The Act has been repealed, and we conclude that the question is purely hypothetical.

For the same reason, we reject the appellants' claim that the Act violates Colo. Const. art XV, § 11, which states that "[n]o street railroad shall be constructed within any city, town, or incorporated village, without the consent of the local authorities having the control of the street or highway proposed to be occupied by such street

railroad." Without further action by the General Assembly, the TCA did not, and does not, have the power to construct a rapid transit system.

### X.

■ The second broad category of challenge to the assessment is based on the nature of the assessment itself. The appellants allege that, because the TCA lacked the power to construct or operate a transportation system, no concrete benefit accrued to the employers within the service area. The appellants take too narrow a view of the benefits involved. Most if not all governmental functions and services have an initial planning component that must be paid for. The TCA's study concluded, in part, that employers and property owners within the service area could not and should not alone shoulder the burden of constructing and operating a rapid transit system from downtown Denver to Douglas County.

Although the district court upheld the employment assessment as an excise tax, we believe that the assessment constituted a valid special fee imposed on those individuals and entities reasonably likely to benefit from a rapid transit system. *Bloom v. City of Fort Collins*, 784 P.2d 304, 310 (Colo.1989). Thus, the assessment was "a charge imposed on persons or property and reasonably designed to meet the overall cost of the service for which the fee is imposed." *Id.* At the time of the assessments challenged here, the service performed was the determination of the feasibility, contours, and cost of rapid rail transit. It was reasonable to assume that employers within the service area would benefit from the development of such planning. We conclude, therefore, that the employment assessment was a valid method of defraying the expenses incurred in the performance of governmental planning.[5]

The assessment is also not invalid because the boundaries of the service area are not defined, in the opinion of appellants, with mathematical certainty. They complain that a "line one mile from a 200 feet wide point results in a line 200 feet wide." While this may be unobjectionable as a matter of geometry, it does not apply to the definition of service area supplied by the General Assembly:

"Service area" means a geographic area which is served by public transit within the boundaries of which the financing mechanisms provided by section 32–9.5–108 may be utilized for construction of a fixed guideway rapid transit system, any part of which is located within a mile from the center point of any fixed guideway rapid transit station or within one-half mile from the centerline of any rapid transit fixed guideway, whichever is greater. If any portion of an undivided tract or any building or structure lies within the service area, the whole of such tract, building, or structure shall be included in the service area.

§ 32–9.5–102(5). In addition, none of the appellants has alleged in the complaint that they even fall within their hypothetical zone of uncertainty. We conclude that the employment assessment is not invalid because of any improper establishment of service area boundaries.

### XI.

Accordingly, we affirm the judgment of the district court upholding the validity of the Transit Construction Authority Act, as amended in 1988, and dismissing the appellants' complaint.

---

5. Because no special assessments on commercial property in the service area were ever made, we do not consider the appellants' contention that such a tax would be confiscatory in violation of the due process and equal protection clauses of the state and federal Constitutions.