John K. THORPE, Elisha E. Sprong, Darrell J. Vigil, Sean P. Ley, and Hector Juarez, individually and on behalf of all others similarly situated, Plaintiffs–Appellants,

v.

STATE of Colorado and Fred Fisher in his official capacity as Executive Director of the Colorado Department of Revenue and Tax Collector for the State of Colorado, Defendants–Appellees.

No. 03CA0243.

Colorado Court of Appeals, Division V.

Oct. 21, 2004.

Certiorari Denied Feb. 14, 2005.

Lilley & Garcia, LLP, Moses Garcia, M. Stephen Dampier P.C., M. Stephen Dampier, Denver, for Plaintiffs–Appellants.

Ken Salazar, Attorney General, Carolyn Lievers, Assistant Attorney General, Denver, for Defendants–Appellees.

NIETO, J.

In this action challenging the constitutionality of limiting certain tax refunds to full-year Colorado residents, plaintiffs, John K. Thorpe, Elisha E. Sprong, Darrell J. Vigil, Sean P. Ley, and Hector Juarez, appeal the judgment entered in favor of defendants, the State of Colorado and Fred Fisher in his official capacity as Executive Director of the Colorado Department of Revenue and Tax Collector for the State of Colorado (collectively the State). We affirm.

In fiscal year 1996–97 and thereafter, the State collected excess revenue that it was required to refund under the Taxpayer's Bill of Rights (TABOR), article X, § 20 of the Colorado Constitution. The excess revenue arose from a general fund surplus of all taxes, fees, and other nonexempt revenues collected by the State.

To comply with TABOR and to avoid federal income tax implications for recipients, the General Assembly decided to refund a portion of the sales tax collected to full-year residents. It enacted §§ 39–22–120 and 39–22–2001 to 39–22–2003, C.R.S.2004 (collectively refund statutes), to accomplish these objectives.

Recognizing the wide variety of sources of revenue and the impossibility of identifying or returning particular payments, the General Assembly concluded that proportional refunds were not feasible. Sections 39–22–120(1)(i)(I)–(II), 39–22–2001(1)(i)(I)–(II), C.R.S.2004. It also determined that "more Coloradans pay state sales tax than any other state tax," and therefore, to refund the excess revenue as a state sales tax refund was both reasonable and fair. Sections 39–22–120(1)(i)(III), 39–22–2001(1)(i)(III), C.R.S. 2004. The General Assembly limited the sales tax refund, as relevant here, to those individuals who had been domiciled in this state for the entire taxable year. Sections 39–22–120(2)(a), (3), 39–22–2003(1)(a), (2), C.R.S.2004.

The legislative declarations in §§ 39–22–120(1) and 39–22–2001 make clear that the purpose of the refund statutes is to refund revenue collected by the State in excess of the amounts authorized by TABOR. The statutes look backward in that the necessity for a refund cannot be known until after all the revenue for a particular tax year has been collected. Thus, they have no effect on taxpayers during the tax year in which the taxes, fees, and other nonexempt revenues are assessed and collected.

TABOR generally does not place limits on the amount that can be generated from particular taxes or sources of government revenue. Rather, it limits the amount the State can spend in a fiscal year and mandates refunds in the next fiscal year if total revenue exceeds the TABOR limits. However, "Refunds need not be proportional when prior payments are impractical to identify or return." Colo. Const. art. X, § 20(1). Thus, when proportionate refunds are not practical, the purposes of TABOR can be accomplished by refunding a particular tax even though the excess revenue comes from a variety of sources.

Here, it was undisputed that the revenues collected by the State were from many sources, including income and sales taxes, taxes on specific items, service and inspection fees, license and permit fees, rents, and interest and investment income. Although plaintiffs, who were not full-year residents,

had paid sales and income taxes, it was also undisputed that the State could not identify and return a proportional amount to every person who paid a particular tax or fee.

Plaintiffs commenced this class action on behalf of nonresidents and part-year residents challenging the constitutionality of the refund statutes for the 1997, 1998, and 1999 income tax years. Plaintiffs and the State filed motions for summary judgment in which both parties asserted the absence of disputed issues of fact. Before ruling on class certification, the trial court granted summary judgment in favor of the State. This appeal followed.

## I.

Plaintiffs assert on appeal that the trial court improperly decided disputed material issues of fact. We disagree.

Appellate review of summary judgment is de novo. Summary judgment is proper only when the pleadings, affidavits, depositions, or admissions show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56; *De La Rosa v. W. Funding, Inc.*, 24 P.3d 637 (Colo.App. 2001).

However, plaintiffs fail to state what material facts the trial court decided. Accordingly, we decline to address this issue because it was only perfunctorily presented in plaintiffs' brief. *See People v. Diefenderfer*, 784 P.2d 741, 752 (Colo.1989)("It is the duty of counsel for appealing parties to inform a reviewing court both as to the specific errors relied upon and as to the grounds, supporting facts and authorities therefor."). Moreover, our review of the record reveals that the facts relevant to this appeal are not in dispute.

## II.

Plaintiffs contend the refund statutes violate their rights under the Privileges and Immunities Clause of article IV, § 2, of the United States Constitution, particularly their right to travel interstate. We disagree.

Statutes are presumed constitutional. The party asserting that a statute is unconstitutional has the burden of establishing unconstitutionality beyond a reasonable doubt. *Anderson v. Colo. State Dep't of Pers.*, 756 P.2d 969, 975 (Colo.1988). Where a statute is susceptible of a constitutional as well as an unconstitutional construction, the legislature will be presumed to have intended the constitutional construction. *State v. Colo. Civil Rights Comm'n*, 185 Colo. 42, 521 P.2d 908 (1974).

■ Article IV, § 2 of the Constitution states, "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens of the several States." Specifically, the Privileges and Immunities Clause protects the right of a citizen of one state to enter and leave another state, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second state, and for those travelers who elect to become permanent residents, the right to be treated like other citizens of that state. *Saenz v. Roe*, 526 U.S. 489, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999).

### A.

■ The Privileges and Immunities Clause bars discrimination against citizens of other states absent substantial reason for the discrimination beyond the mere fact that they are citizens of other states. *Saenz v. Roe, supra.* However, a state need not always apply all its laws or extend all its services equally to anyone, resident or nonresident, who may request that it do so. *Baldwin v. Fish & Game Comm'n*, 436 U.S. 371, 98 S.Ct. 1852, 56 L.Ed.2d 354 (1978).

■ Like many other constitutional provisions, the Privileges and Immunities Clause is not absolute. It does not preclude disparate treatment in the many situations where valid reasons exist for such treatment, independent of residency in the forum state. Thus, the inquiry in each case must be whether such reasons exist and whether the degree of discrimination bears a close relation to them.

■ Distinctions between residents and nonresidents are permissible if they merely reflect the fact that this is a nation composed of individual states. Other distinctions are prohibited because they hinder the formation, the purpose, or the development of a single union of the states. *Lunding v. New*

*York Tax Appeals Tribunal,* 522 U.S. 287, 118 S.Ct. 766, 139 L.Ed.2d 717 (1998). Thus, a state must treat all citizens, resident and nonresident, equally only with respect to those "privileges" and "immunities" bearing upon the viability of the nation as a single entity. *Baldwin v. Fish & Game Comm'n, supra.*

■ The Supreme Court has not undertaken to define specifically the nature or the extent of these privileges and immunities. *Saenz v. Roe, supra* (Rehnquist, J., dissenting); *Duncan v. Louisiana,* 391 U.S. 145, 166, 88 S.Ct. 1444, 1456, 20 L.Ed.2d 491 (1968)(privileges and immunities "are not and cannot be fully defined in their entire extent and precise nature"). However, the Constitution does not preclude states from adopting "justified and reasonable distinctions between residents and nonresidents in the provision of tax benefits, whether in the form of tax deductions or tax credits." *Lunding v. New York Tax Appeals Tribunal, supra,* 522 U.S. at 311, 118 S.Ct. at 780.

The inquiry into permissible distinction must be conducted with due regard for the principle that the states should have considerable leeway in analyzing local evils and in prescribing appropriate cures. *Toomer v. Witsell,* 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948).

Here, the refund statutes address the "local evil" of excess revenues and prescribe the "appropriate cure" of a refund. The question thus is whether the distinctions between residents and nonresidents in the refund statutes are justified and reasonable. *See Lunding v. New York Tax Appeals Tribunal, supra.* For the following reasons, we conclude they are.

The purpose of the refund statutes is to comply with TABOR. A statute that complies with the state constitution does not necessarily comply with federal constitutional requirements, but plaintiffs do not contend that TABOR has any constitutional defects. Therefore, in the context of this appeal, we will assume, without deciding, that the refund statutes' purpose is legitimate and constitutionally permissible.

■ Plaintiffs assert that the refund statutes have a discriminatory purpose on their face because they create unjustified distinctions between full-year residents on the one hand and part-year residents and nonresidents on the other. While the statutes make these distinctions, a review of the legislative declarations in §§ 39–22–120(1) and 39–22–2001 reveals a nondiscriminatory purpose. The distinctions between full-year residents and others resulted not from an intent to discriminate, but rather from an effort to prescribe a timely refund of excess revenues to the people who paid most of the money into the revenue fund. Given the wide variety of taxes, fees, and other nonexempt revenue sources that produce the excess revenue, most of which apply only to full-year residents, the General Assembly could reasonably conclude that full-year residents paid most of the money into the revenue fund.

The General Assembly designated the refund as a refund of sales taxes to avoid federal tax consequences to the recipients, not because the excess revenue was caused exclusively by sales taxes paid. Hence, the relevant inquiry was who paid the most taxes overall, not who paid the most sales tax. The General Assembly determined that full-year residents paid most of the taxes, and therefore, nonresidents and part-year residents are not similarly situated with full-year residents for purposes of the refund statutes. Thus, we conclude the distinctions were justified and reasonable.

Nevertheless, plaintiffs argue that by refunding the excess revenue as a sales tax refund, the refund statutes had the effect of lowering the sales tax rate for full-year residents as compared to part-year residents and nonresidents who also paid sales tax. However, the legislative purpose was to refund excess revenue to the people who paid the most money into the revenue fund, and the use of a sales tax refund was merely a vehicle to accomplish this purpose. Any incidental discrimination in sales tax rates does not defeat the otherwise legitimate purpose of the refund statutes, because the choice of this method for making the required refund was justified and reasonable based on the following considerations: according to data considered by the General Assembly, full-year residents paid most of the money that created the excess revenue; more Colora-

dans pay sales tax than any other state tax; making a proportional refund of sales tax revenues was impossible; TABOR requires that refunds be made in the next fiscal year; and avoiding federal income tax consequences was an additional legitimate purpose.

Therefore, we conclude the distinctions in the refund statutes are not facially invalid under the Privileges and Immunities Clause.

### B.

Turning to the constitutional right to travel, a brief review of some major cases illustrates the parameters of its protective reach. We conclude plaintiffs' claim does not come within that reach.

One line of these cases primarily concerns state action that directly affects interstate or intrastate travel. *United States v. Guest,* 383 U.S. 745, 757, 86 S.Ct. 1170, 1177–78, 16 L.Ed.2d 239 (1966)(indictment alleging conspiracy to injure and intimidate citizens in use of highways adequately alleged conspiracy to violate a constitutional right, the right to travel); *Crandall v. Nevada,* 73 U.S. (6 Wall.) 35, 49, 18 L.Ed. 745 (1867)(invalidated law that taxed passengers transported for hire upon leaving Nevada). Other cases involve diminution of a basic necessity of life or an important right of citizenship based upon an individual's exercise of the right to travel. *Mem'l Hosp. v. Maricopa County,* 415 U.S. 250, 269, 94 S.Ct. 1076, 1087–88, 39 L.Ed.2d 306 (1974)(invalidated durational residency requirement for receipt of medical care by indigents); *Dunn v. Blumstein,* 405 U.S. 330, 338–39, 92 S.Ct. 995, 1001–02, 31 L.Ed.2d 274 (1972)(invalidated one-year state residency requirement for exercise of right to vote); *Shapiro v. Thompson,* 394 U.S. 618, 629, 89 S.Ct. 1322, 1328–29, 22 L.Ed.2d 600 (1969)(invalidated one-year state residency requirement for eligibility for welfare benefits), *overruled in part on other grounds by Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Jeffrey v. Colo. State Dep't of Soc. Servs.,* 198 Colo. 265, 269, 599 P.2d 874, 877 (1979)(invalidated thirty-five-year continuous residency requirement for pension benefits); *see also Mayo v. Nat'l Farmers Union Prop. & Cas. Co.,* 833 P.2d 54 (Colo.1992)(comprehensive review of right to travel authorities).

■ Further, when evaluating a right to travel claim, the Supreme Court has carefully distinguished between bona fide residency requirements and residency requirements that treat established residents differently based on the time they migrated into the state. *Attorney General v. Soto–Lopez,* 476 U.S. 898, 106 S.Ct. 2317, 90 L.Ed.2d 899 (1986). Thus, the Court has consistently recognized that while new citizens must have the same opportunity to enjoy the privileges of being a citizen of a state, the states may use bona fide residency requirements to ferret out those who intend to take the privileges from the state and leave. *Saenz v. Roe, supra* (Rehnquist, J., dissenting). "A bona fide residence requirement, appropriately defined and uniformly applied, furthers the substantial state interest in assuring that services provided for its residents are enjoyed only by residents.... A bona fide residence requirement simply requires that the person does establish residence before demanding the services that are restricted to residents." *Martinez v. Bynum,* 461 U.S. 321, 328–29, 103 S.Ct. 1838, 1842–43, 75 L.Ed.2d 879 (1983).

■ Here, plaintiffs make no specific allegation as to how the mere possibility of a future refund hindered their right to travel. They do not allege they were denied basic necessities or that they fell within a class of financially insecure persons who lack access to state-provided resources. Nor do they assert the refund statutes affected an important right of citizenship. Rather, plaintiffs merely argue they were treated less favorably than full-year residents.

■ Disparate treatment, without an assertion that this treatment hinders the formation, the purpose, or the development of a single union, is insufficient to establish a claim under the Privileges and Immunities Clause. Under the refund statutes, plaintiffs may receive future refunds if they are domiciled in the state for one year. Hence, the refund statutes do not establish a permanent denial of benefits. And because the refund statutes operate only retrospectively and concern excess revenue from the prior tax year, the statutes impose no immediate penalty on a person who travels. Therefore,

plaintiffs have failed to meet their burden to establish that their right to travel is impaired.

Accordingly, we conclude that plaintiffs' rights under the Privileges and Immunities Clause were not hindered by the refund statutes.

Because we find no restriction on plaintiffs' right to travel, we need not determine whether the trial court applied the correct standard of review. *See In re Estate of Krotiuk,* 12 P.3d 302 (Colo.App.2000)(an appellate court will uphold a decision by the trial court that has reached a correct result, albeit using different reasoning).

### III.

Plaintiffs next contend the refund statutes violate the Equal Protection Clause, U.S. Const. amend XIV. They argue that the statutes violated their fundamental rights under the Privileges and Immunities Clause and their fundamental right to fair taxation. Therefore, they argue, the statutes must be subjected to strict scrutiny rather than the rational basis test. We disagree.

### A.

We have already determined that the refund statutes did not violate plaintiffs' rights under the Privileges and Immunities Clause, and therefore, we reject that part of the argument. *See Zobel v. Williams,* 457 U.S. 55, 60 n. 6, 102 S.Ct. 2309, 2313, 72 L.Ed.2d 672 (1982)("In reality, right to travel analysis refers to little more than a particular application of equal protection analysis.").

Further, plaintiffs have cited no authority, and we are aware of none, holding that statutes creating classifications for tax purposes implicate fundamental rights.

 Fundamental rights are those implicit in the concept of ordered liberty such that "neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg,* 521 U.S. 702, 721, 117 S.Ct. 2258, 2268, 138 L.Ed.2d 772 (1997)(quoting *Palko v. Connecticut,* 302 U.S. 319, 325, 326, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937)). They are rights deeply rooted in this nation's history and tradition and must be explicitly or implicitly guaranteed by the United States Constitution. *Chavez v. Martinez,* 538 U.S.

760, 775, 123 S.Ct. 1994, 2005, 155 L.Ed.2d 984 (2003); *San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 33–34, 93 S.Ct. 1278, 1296–97, 36 L.Ed.2d 16 (1973). The Supreme Court has been reluctant to recognize new rights as fundamental, and "[t]he development of fundamental rights in our jurisprudence has never been a matter for ad hoc determination." *Evans v. Romer,* 882 P.2d 1335, 1359 (Colo.1994)(Erickson, J., dissenting), *aff'd,* 517 U.S. 620, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996). "It is not the province of [the Supreme] Court to create substantive constitutional rights in the name of guaranteeing equal protection of the laws." *San Antonio Indep. Sch. Dist. v. Rodriguez, supra,* 411 U.S. at 33, 93 S.Ct. at 1297. Therefore, in the absence of compelling authority, we are not inclined to recognize a new fundamental right.

 Moreover, such a holding would be incompatible with settled law granting legislatures broad authority in establishing classifications for purposes of taxation. In taxation matters, "legislatures possess the greatest freedom in classification." *Madden v. Kentucky,* 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590 (1940). The Supreme Court has generally exercised a narrow review of tax classifications "to fit the broad discretion vested in the state legislatures." *Austin v. New Hampshire,* 420 U.S. 656, 662, 95 S.Ct. 1191, 1195, 43 L.Ed.2d 530 (1975). "The equal protection clause does not require the state to maintain a rigid rule of equal taxation...." *Lawrence v. State Tax Comm'n,* 286 U.S. 276, 284, 52 S.Ct. 556, 559, 76 L.Ed. 1102 (1932). Therefore, we reject plaintiffs' argument that for equal protection purposes, the refund statutes implicate a fundamental right.

### B.

Because plaintiffs do not claim to be members of a suspect class and the refund statutes do not implicate a fundamental right, we will review the refund statutes under the rational basis test.

 When a state classification does not involve a suspect class or a fundamental right, review under the Equal Protection

**1072**

Clause is limited to the rational basis test to determine whether the challenged statute is rationally related to a legitimate state interest. *Colo. Dep't of Soc. Servs. v. Bd. of County Comm'rs*, 697 P.2d 1, 13–14 (Colo. 1985).

Under the rational basis test, a statute does not violate equal protection guarantees if it is reasonable and bears a rational relationship to a legitimate state objective. *Scholz v. Metro. Pathologists, P.C.*, 851 P.2d 901 (Colo.1993).

In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational.

*Nordlinger v. Hahn*, 505 U.S. 1, 11, 112 S.Ct. 2326, 2332, 120 L.Ed.2d 1 (1992) (citations omitted). Even if a law appears unwise, works to the disadvantage of a particular group, or the rationale for the law seems tenuous, a reviewing court should not overturn the law on equal protection grounds. *Romer v. Evans*, 517 U.S. 620, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996). Further, a "classification need not be perfect," and a law is not invalid simply because it may result in some inequality. *Millis v. Bd. of County Comm'rs*, 626 P.2d 652, 658 (Colo.1981).

Thus, possible differences in tax burdens not shown to be substantial or based on arbitrary and capricious discrimination, do not fall within constitutional prohibitions. *Friends of Chamber Music v. City & County of Denver*, 696 P.2d 309 (Colo.1985).

Further, a tax is not an assessment of benefits. "It is . . . a means of distributing the burden of the cost of government. The only benefit to which the taxpayer is constitutionally entitled is that derived from his enjoyment of the privileges of living in an organized society, established and safeguarded by the devotion of taxes to public purposes." *Carmichael v. S. Coal & Coke Co.*, 301 U.S. 495, 522, 57 S.Ct. 868, 878–79, 81 L.Ed. 1245 (1937).

Here, the legislature was mandated by the Colorado Constitution to refund the surplus tax revenue. In crafting the refund mandated by TABOR, the General Assembly sought to address this legitimate state interest by refunding the surplus to those persons who had contributed most substantially to the surplus. Therefore, as discussed above in part II, it had a rational basis for refunding excess revenue to full-year residents. Its choice of a sales tax refund as a means of avoiding federal tax implications for recipients of the refund also had a rational basis. Thus, we find no equal protection violation.

IV.

Plaintiffs next contend the refund statutes violate the Commerce Clause, U.S. Const. art. I, § 8(3). We disagree.

Although phrased merely as a grant of authority to Congress to regulate commerce among the several states, the Commerce Clause forbids the states from discriminating against interstate trade. More specifically, the clause prohibits economic protectionism, such as regulatory measures designed to benefit in-state economic interests by burdening out-of-state competition. *United Air Lines, Inc. v. City & County of Denver*, 973 P.2d 647 (Colo.App.1998), *aff'd*, 992 P.2d 41 (Colo.2000).

Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

*Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970) (citation omitted); *see also Winkler v. Colo. Dep't of Health*, 193 Colo. 170, 564 P.2d 107 (1977).

Here, plaintiffs did not establish that the refund statutes have anything more than an incidental burden on interstate commerce. The statutes do not limit or restrict in any way plaintiffs' ability to access the markets in Colorado. Because plaintiffs could not have known whether there would be any refund when they did business in Colorado, and because the refunds that materialized were not in a significant amount for any individual recipient, we fail to perceive how the refund statutes could have impaired plaintiffs' access to interstate commerce. Further, any small burden imposed on plaintiffs is not clearly excessive in relation to the local benefit of a timely and reasonable refund in compliance with TABOR. Therefore, we discern no Commerce Clause violation.

The judgment is affirmed.

Judge WEBB and Judge RUSSEL concur.