Douglas **BRUCE**, Plaintiff–Appellant,

v.

**CITY OF COLORADO SPRINGS,**
Defendant–Appellee.

No. 04CA1572.

Colorado Court of Appeals,
Div. V.

Dec. 15, 2005.

Certiorari Denied April 3, 2006.*

* Justice COATS and Justice EID would grant as to the following issues:

Whether the court of appeals erred when it determined that the street light service charge is a valid fee and not a tax.

Whether the court of appeals erred when it determined that the cable television franchise grant is not a tax.

Whether challenge to cable television franchise election is barred by the applicable statute of limitation.

Douglas Bruce, Pro Se.

Patricia K. Kelly, City Attorney, Shane White, Senior Attorney, Colorado Springs, Colorado, for Defendant–Appellee.

ROMAN, J.

Plaintiff, Douglas Bruce, appeals the summary judgment entered in favor of defendant, City of Colorado Springs. We affirm.

In November 2000, the City held an election in which the voters approved a cable television franchise agreement. The City then entered into a franchise agreement with Century Colorado Springs Partnership (Adelphia) to construct and operate a cable system. Adelphia agreed to pay the City $4 million to construct a dark fiber system, for which each subscriber is charged $0.33 per month. Adelphia also agreed to make the City a grant for use of the City's rights-of-way and for educational and governmental programming, facilities, and equipment, for which each subscriber is charged $1.20 per month.

Two years later, in November 2002, the City Council passed a street light ordinance to collect revenue for the operation and maintenance of the City's streetlights, "inclusive of the power costs and the capital costs of street light infrastructure on arterial and residential streets." The City Council calculated the amount to charge property owners based on whether their property was residential or commercial; the relative amounts of residential and commercial property within the City; and the total estimated expense in operating the streetlights.

Plaintiff filed a complaint alleging that the state Taxpayers' Bill of Rights (TABOR), Colo. Const. art. X, § 20, and the city Taxpayers' Bill of Rights (city TABOR), Colo. Springs City Charter 7–90, were violated because (1) the charge for street light service under the ordinance constitutes a tax; (2) the charge for cable television constitutes a tax; and (3) the ballot title information related to the November 2000 election was incorrect and the required financial information was not sent to voters before the election.

The City responded that it imposed a street light service fee and entered into the cable franchise agreement in compliance with its home rule authority. The City also asserted that the statute of limitations barred plaintiff's claim regarding the November 2000 election ballot title and information requirements.

Plaintiff and the City agreed that no disputed issues of material fact exist and filed cross-motions for summary judgment. The trial court entered summary judgment in favor of the City.

A trial court may enter summary judgment when no disputed issue of material fact exists and the moving party is entitled to judgment as a matter of law. We review summary judgments de novo. *McIntyre v. Bd. of County Comm'rs*, 86 P.3d 402 (Colo. 2004).

## I. Street Light Service Charge

Plaintiff first contends the street light service charge constitutes a tax imposed in violation of the state TABOR and the city TABOR. We disagree.

On November 3, 1992, Colorado voters approved TABOR, an amendment to the Colorado Constitution that circumscribes the revenue, spending, and debt powers of state and local governments. *City of Wheat Ridge v. Cerveny*, 913 P.2d 1110 (Colo.1996). Under TABOR, "any new tax" must be approved by the voters. Colo. Const. art. X, § 20(4)(a); *In re 1999–2000 # 25*, 974 P.2d 458 (Colo. 1999).

Likewise, the City's Charter contains an almost identical provision requiring prior voter approval for "any new tax" imposed by the City. Colo. Springs City Charter 7–90(d)(1). Because the city TABOR provision mirrors the state constitutional amendment, our analysis applies to both TABOR and city TABOR. *See People v. Cooper*, 27 P.3d 348 (Colo.2001)(holding that when language is exactly the same in two statutory provisions, the meaning of that language is also identical).

To determine whether the street light service charge violates TABOR and city TABOR, we must first determine whether the charge is a tax, thereby invoking the TABOR provisions. We conclude the service charge is not a tax, but a service fee; thus, TABOR and city TABOR are inapplicable.

■ The distinction between a fee and a tax depends on the nature and function of the charge, not on its label. *Westrac, Inc. v. Walker Field,* 812 P.2d 714 (Colo.App.1991). A fee is a charge imposed on persons or property to defray costs of a particular government service. *E–470 Pub. Highway Auth. v. 455 Co.,* 3 P.3d 18 (Colo.2000). A tax is a means of distributing the general burden of the cost of government, rather than an assessment of benefits. *Thorpe v. State,* 107 P.3d 1064 (Colo.App.2004).

Several measures exist for a municipality to raise revenue for its public functions. These measures include an ad valorem tax, an excise tax, a special assessment, and a special fee. *Bloom v. City of Fort Collins,* 784 P.2d 304 (Colo.1989); *see E–470 Pub. Highway Auth. v. 455 Co., supra* (applying the *Bloom* analysis after the passage of TABOR). The parties concede, the trial court found, and we agree that the street light charge is not an ad valorem tax, an excise tax, or a special assessment.

■ A special fee is not imposed to defray the general expenses of government, but rather to defray the cost of a particular governmental service. Special fees need not be voluntary. *Bloom v. City of Fort Collins, supra.*

■ While the amount of the fee must be reasonably related to the overall cost of the service, mathematical exactitude is not required, and the particular mode adopted by a city in assessing the fee is a matter of legislative discretion. *Bloom v. City of Fort Collins, supra.* Because the setting of fees is a legislative function involving many questions of judgment and discretion, we will not set aside the methodology chosen unless it is inherently unsound. Furthermore, equal protection only requires a rational basis for the fee schedule as applied. *Krupp v. Breck-*

*enridge Sanitation Dist.,* 19 P.3d 687 (Colo. 2001).

■ Under Colorado law, an ordinance creating a special service fee will be upheld as long as the ordinance is reasonably designed to defray the cost of the particular service rendered by the municipality. *Bloom v. City of Fort Collins, supra* (upholding transportation utility fees); *see also Krupp v. Breckenridge Sanitation Dist., supra* (upholding wastewater treatment fees); *E–470 Pub. Highway Auth. v. 455 Co., supra* (upholding highway expansion fees); *City of Littleton v. State,* 855 P.2d 448 (Colo.1993) (upholding storm drain and flood management fees); *Anema v. Transit Constr. Auth.,* 788 P.2d 1261 (Colo.1990)(upholding public transportation fees); *Zelinger v. City & County of Denver,* 724 P.2d 1356 (Colo.1986)(upholding storm drainage fees); *Loup–Miller Constr. Co. v. City & County of Denver,* 676 P.2d 1170 (Colo.1984) (upholding sewer system fees); *City of Arvada v. City & County of Denver,* 663 P.2d 611 (Colo.1983)(upholding water system fees); *Bainbridge, Inc. v. Bd. of County Comm'rs,* 964 P.2d 575 (Colo.App.1998)(upholding building permit fees); *Thrifty Rent–A–Car Sys., Inc. v. City & County of Denver,* 833 P.2d 852 (Colo.App.1992)(upholding airport user fees); *Westrac, Inc. v. Walker Field, supra* (similar).

■ Legislation is presumed constitutional, and the challenging party has the burden to prove it is unconstitutional beyond a reasonable doubt. *Owens v. Colo. Cong. of Parents, Teachers, & Students,* 92 P.3d 933 (Colo.2004).

Here, the City imposed a service charge to defray the cost of operating and maintaining its street lights. It calculated the amount of charges based on the overall cost of providing streetlights and chose to assess the charges based on the ratio of commercial and residential property use within the City. Thus, the street light service charge is reasonably related to the overall cost of operating street lights. Although the City might have chosen a different calculation for imposing this service charge, we find nothing inherently unsound in its methodology. *See*

*Krupp v. Breckenridge Sanitation Dist., supra.*

Moreover, the revenue raised from the street light service charge was deposited into a special fund and was not used for general fund purposes. While the general fund may have received some benefit because the cost of operating and maintaining street lights is no longer taken from the general fund, this benefit is not determinative of whether the charge is a tax or a fee. *Zelinger v. City & County of Denver, supra.*

Plaintiff relies on a case decided by the Washington Supreme Court for his contention that street light service charges are taxes, not fees. *See Okeson v. City of Seattle,* 150 Wash.2d 540, 78 P.3d 1279 (2003). However, this case interprets the Washington State Constitution and statutes, which contain provisions that differ from Colorado law, and it relies on a "proprietary versus governmental function" analysis that has been rejected in the context of utility relocation law by the Colorado Supreme Court. *See City & County of Denver v. Mountain States Tel. & Tel. Co.,* 754 P.2d 1172 (Colo. 1988).

In any event, we are bound to follow *Bloom v. City of Fort Collins* and its progeny. *See Bernal v. Lumbermens Mut. Cas. Co.,* 97 P.3d 197 (Colo.App.2003). While it could be argued that the *Bloom* analysis of special fees has led, and will lead, to almost any governmental service being structured as a fee, thereby escaping TABOR, it is not for this intermediate court to change a test announced by our supreme court, anymore than it would be our place to rewrite TABOR or the City Charter.

Accordingly, the street light service charge is a special fee reasonably related to the overall cost of providing the City's street lights. Thus, because the street light service charge is not a tax, it is not subject to TABOR and city TABOR. We also conclude plaintiff has not proved that the City's legislative decision is unconstitutional beyond a reasonable doubt.

## II. Cable Television Charges

Plaintiff also contends the cable television charges are actually taxes the City imposes on Adelphia, which are then passed on to consumers in violation of TABOR and city TABOR. We disagree.

As in our analysis of the street light service charge, before considering whether the cable television charges violate TABOR and city TABOR, we must first determine whether the charges are taxes, thereby invoking the TABOR provisions. We conclude the charges are not taxes, and thus, TABOR and city TABOR are inapplicable.

Initially, we note that the trial court entered summary judgment on this issue because it found the FCC rules preempted the TABOR provisions. However, we need not decide whether its preemption analysis was correct, because we affirm the trial court's conclusion on different grounds. *See Steamboat Springs Rental & Leasing, Inc. v. City & County of Denver,* 15 P.3d 785 (Colo.App. 2000).

### A.

We reject plaintiff's argument that the City conceded that the charges were taxes. The City's finance director testified that the 2001 and 2002 Comprehensive Annual Financial Report erroneously categorized the cable television charges as taxes, rather than "charge[s] for services." The finance director testified that thousands of entries are made in each report and that the clerical error was corrected in the 2003 Comprehensive Annual Financial Report. Plaintiff did not present any evidence disputing this testimony. *See Civil Serv. Comm'n v. Pinder,* 812 P.2d 645 (Colo.1991) (an affirmative showing of uncontradicted facts requires a trial court to conclude that no genuine issue of material fact exists).

Furthermore, Adelphia's listing of the charges under the heading of "Taxes and Fees" in its bills to subscribers does not prove that the charges were taxes, rather than fees. As we noted above, the distinction between a fee and a tax depends on the nature and function of the charge, not on its label. *Westrac, Inc. v. Walker Field, supra.*

### B.

■ We also reject plaintiff's argument that the money that Adelphia collects from its subscribers and then pays to the City under its voter-approved franchise agreement is inherently a tax.

■ Municipalities may enter into contracts. Section 31–15–101(1)(c), C.R.S.2005. Further, no specific restrictions on the right of a city to contract exist, and a city has the same right to contract as a natural person. *City of Denver v. Hubbard,* 17 Colo.App. 346, 68 P. 993 (1902); *cf. Perl–Mack Enters. Co. v. City & County of Denver,* 194 Colo. 4, 568 P.2d 468 (1977)(contracts providing for sanitation services and fees are within the proper scope of the proprietary powers of a municipal corporation).

■ The charges for use of a public facility owned by a municipality are not ordinarily considered taxes because they are imposed only on those using the services provided to defray the expense of operating or improving the facility. *Westrac, Inc. v. Walker Field, supra; cf. Thrifty Rent–A–Car Sys., Inc. v. City & County of Denver, supra* (a "fee" is designed to defray the expense of operating and improving the facility upon which it is imposed, whereas a "tax" is used to defray general municipal expenses).

■ Municipalities routinely charge a franchise fee for the right to operate a cable television system within their jurisdiction. Franchise fees are not taxes, but rather are the price paid to rent use of public rights-of-way. *City of Dallas v. Fed. Commc'ns Comm'n,* 118 F.3d 393 (5th Cir.1997)(even if franchise fees were treated as a tax, they would still be treated as a normal expense of doing business unless the tax was imposed directly upon the subscriber); *see also City of St. Louis v. W. Union Tel. Co.,* 148 U.S. 92, 13 S.Ct. 485, 37 L.Ed. 380 (1893)(fee paid to a municipality for the use of rights-of-way is rent, not a tax); *United States v. City of Huntington,* 999 F.2d 71 (4th Cir.1993)("user fees" are payments given in return for government-provided benefits, while taxes are enforced contributions to support the government).

Here, under the terms of the voter-approved franchise agreement, Adelphia agreed to pay a monthly fee of $1.20 per subscriber "in consideration of the privilege granted under this Agreement for the use of Streets and public ways and the privilege to construct and operate a Cable System." In lieu of "paying a franchise fee directly to the City," Adelphia also agreed to provide a dark fiber system for $4 million in "consideration of the privilege granted under this Agreement for the use of Streets, public ways, and Public Utility Easements and the privilege to construct and operate a Cable System."

The franchise agreement requires Adelphia to "comply with all applicable federal, state, and local laws, rules, and regulations," which include the Federal Communications Commission (FCC) rules. The agreement states that "under FCC rules certain external costs, including the ... grants described herein, are eligible for 'pass through' to Subscribers." Further, Adelphia "reserve[d] the right to charge Subscribers costs authorized by the Cable Acts and to itemize such legally authorized costs on Subscriber bills." Federal law provides that a cable operator may designate the portion of a subscriber's bill attributable to the franchise fee as a separate item on the bill. 47 U.S.C. § 542(f) (2005).

Thus, the charges listed in Adelphia's bill represent the cost of doing business with the City. Under the terms of the agreement and federal law, Adelphia has the right to pass on these costs to its subscribers and to itemize such costs on subscribers' bills. Adelphia, not the City, chose how to bill its subscribers. Adelphia has not converted the cost of doing business into a municipal tax merely by choosing to identify the costs as a line item on its bills.

### C.

Accordingly, we conclude the cable television charges are not taxes; thus, TABOR and city TABOR are inapplicable. It follows that we need not consider whether the revenue collected violates TABOR and city TABOR or is exempt from TABOR and city TABOR spending limits.

The judgment is affirmed.

VOGT, J., concurs.

GRAHAM, J., dissents.

Judge GRAHAM dissenting.

I respectfully disagree that the charges imposed by the City of Colorado Springs for street lights and cable television services do not offend the limitations of TABOR, because I believe those charges are actually involuntary taxes. I do not read *Bloom v. City of Fort Collins,* 784 P.2d 304 (Colo.1989), so broadly as to permit the government to charge a fee for any governmental service so long as the fee "is reasonably related to the overall cost of the service," as the majority states. I conclude that a fee must be charged for a service that is not ordinarily provided by governmental activity and must also relate to a service that directly benefits the user. Here, the economic realities of the City's street light service and cable franchise fee indicate that the fees are actually taxes.

Based upon the analysis of special fees adopted by the majority, I believe that almost any governmental service could be structured as a fee and thereby escape the state Taxpayers' Bill of Rights (TABOR), Colo. Const. art. X, § 20, and the city Taxpayers' Bill of Rights (city TABOR), Colorado Springs City Charter 7–90.

Although no specific standard has been established to determine whether a particular charge amounts to a tax, the United States Supreme Court has always looked to "the real nature of the tax and its effect." *United States v. Allegheny County,* 322 U.S. 174, 184, 64 S.Ct. 908, 914, 88 L.Ed. 1209 (1944). "The proper analysis to arrive at the real nature of the assessment is to examine 'all the facts and circumstances ... and assess them on the basis of economic realities.'" *United States v. City of Huntington,* 999 F.2d 71, 73 (4th Cir.1993) (quoting *United States v. City of Columbia,* 914 F.2d 151, 154 (8th Cir.1990)).

The object of any tax is to provide revenue for the general expenses of government. *See Cherry Hills Farms, Inc. v. City of Cherry Hills,* 670 P.2d 779 (Colo.1983). Local government taxes have been classified by type as excise (taxing acts or events) or ad valorem (taxing property). *Bloom v. City of Fort Collins, supra.* Such taxes are distinguished from special assessments, which are based on the premise that a special benefit to property is conferred in an amount at least equal to the special assessment. *Bloom v. City of Fort Collins, supra.*

Assessments and taxes are distinguished from special fees because fees are not designed to raise revenues to defray the general expenses of government. *Bloom* recognizes that a special fee "might be subject to invalidation as a tax when the principal purpose of the fee is to raise revenues for general municipal purposes." *Bloom v. City of Fort Collins, supra,* 784 P.2d at 308. Thus, a proper inquiry must look to the purpose served by the charge.

In assessing its purpose, we must ensure that the fee is directly tied to the service provided. Although mathematical exactitude is not required, there must be a reasonable relationship between the amount of the special fee and the cost of the service. *W. Heights Land Corp. v. City of Fort Collins,* 146 Colo. 464, 362 P.2d 155 (1961).

Applying the principles of *Allegheny County, Western Heights Land Corp.,* and *Bloom,* I would conclude that the street light fee imposed here amounts to a tax.

First, historically, the street light service has been paid by the general fund. Thus, the City of Colorado Springs treated the service as a governmental one and paid for it with general tax revenues. The service was not proprietary, and it did not confer a special benefit to particular property for which a special fee could be charged or a special assessment made. *See Okeson v. City of Seattle,* 150 Wash.2d 540, 78 P.3d 1279 (2003). In *Okeson,* the Washington Supreme Court concluded that street light service charges were taxes and not fees because the service was of the type typically provided by government.

The majority distinguishes *Okeson* in two ways. It notes that the "case interprets the Washington State Constitution and statutes, which contain provisions that differ from Colorado law." It also disagrees with *Okeson's* use of the "proprietary versus governmental

function" analysis, which has been criticized by commentators.

*Okeson*'s analysis stands independent of its interpretation of Washington law because the court first determined whether the charge was a fee or a tax before it could apply that law—much the same as the majority does here to determine the applicability of TABOR and city TABOR. Furthermore, while the "proprietary versus governmental function" analysis may be simplistic, it has application here, where history shows conclusively that street lights are a governmental function directly tied to the general fund. Also, the majority inconsistently applies the analysis later in its opinion when it concludes the cable television charges are fees, citing *Westrac, Inc. v. Walker Field*, 812 P.2d 714 (Colo.App.1991), and stating that "charges for use of a public facility owned by a municipality are not ordinarily considered taxes because they are imposed only on those using the services provided to defray the expenses of operating or improving the facility." The *Westrac* division used the governmental-proprietary distinction in concluding that the fee in question was not a tax.

> Because defendant is acting in a proprietary, rather than in a governmental capacity, the adoption of a fee and charge structure for the privilege of non-aeronautical parties doing business at the airport is . . . governed by the same rules and regulations that apply to a private land owner.

*Westrac, supra*, 812 P.2d at 716 (citation omitted). Thus, on the one hand, the majority dismisses the efficacy of the governmental-proprietary analysis and, on the other, justifies the distinction by citing a decision which recognizes and applies the analysis. Here, street lighting is governmental, not proprietary.

Second, I discern no reasonable relationship between the amount of the fee and the service rendered. The fee here is charged, in some instances, although the property owner has no service from street lights. The fee is also assessed at significantly higher rates on commercial property. Arguably, commercial property, often arrayed with building lights and parking lot lights, has less need for street lighting than individual residences. Yet commercial property pays higher fees for the same or, at some locations, no lighting. The fee here does not appear to be based upon use. The cases relied upon by the majority upheld a variety of fees, all of which have a nexus between the fee charged and the benefit conferred upon the user. That nexus is absent here.

In *United States v. City of Huntington, supra*, the court rejected a city's attempt to charge for fire and police services under a special "municipal service fee." These fees were charged on a square-footage method of assessment and were in response to a state constitutional limitation on ad valorem taxation. Here, the City's removal of street lighting from its general fund occurred after the adoption of our state's constitutional limitation on government growth (TABOR) and the City's limitation on government growth (city TABOR).

Thus, it appears to me that under the holding of the majority, it will take nothing other than a pen and artful characterization to shift government services from tax based to fee based, thus eluding the will of the People as expressed in TABOR. "Under the theory advanced by the City, virtually all of what now are considered 'taxes' could be transmuted into 'user fees' by the simple expedient of dividing what are generally accepted as taxes into constituent parts, e.g., a 'police fee.'" *City of Huntington, supra*, 999 F.2d at 74.

The cable television charges are also transparently disguised, pass-through taxes in my view. Although the City treated the charges on its own books as "taxes," I do not consider this to be determinative of the issue. Instead, I look at the practical aspect of charging a fee to grant access to and to repair the public rights-of-way beneath which the fiber optic cable is installed. The streets and rights-of-way are constructed and maintained with general tax revenues. When they are torn up to allow for the installation of the franchisor's cable, they are then repaved with special fees. These are taxes, collected by the cable company and paid by the consumer, to maintain public rights-of-way. Based upon the economic realities of the use

of the fees to repair and maintain public rights-of-way, I view the charge as a tax, passed through to the consumer. *See United States v. City of Columbia, supra.*

I would therefore reverse the decision of the trial court.